THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, vs. C. E. FREEMAN, Plaintiff in Error.

*Opinion filed December 22, 1909.*

1. CONSTITUTIONAL LAW—*regulations to prevent fraud and imposition are within police power.* The police power of the State is not limited to regulations necessary for the preservation of good order or the public health and safety, but includes regulations to prevent fraud, deceit, cheating and imposition.

2. SAME—*purpose of act to regulate sale of imitation butter.* The purpose of the act to regulate the manufacture and sale of oleomargarine or other imitation butter (Hurd's Stat. 1908, p. 713,) is not to prohibit or discriminate against the manufacture and sale of substitutes for butter, but to protect the public against fraud and imposition in the sale of such substitutes as real butter, and such purpose is within the police power of the State.

3. SAME—*provision prohibiting the use of coloring matter in imitation butter is not unreasonable.* The provision of the act to regulate the manufacture and sale of imitation butter which prohibits the coloring of imitation butter to make it resemble genuine butter is not unreasonable, even though the act permits the coloring of genuine butter.

WRIT OF ERROR to the Municipal Court of Chicago; the Hon. JOHN C. SCOVEL, Judge, presiding.

CHARLES WOODWARD, and DELBERT A. CLITHERO, for plaintiff in error:

"Life, liberty and the pursuit of happiness," as used in the constitution, is general, and includes rights inherent and inalienable. *Ruhstrat* v. *People,* 185 Ill. 138; *Gillespie* v. *People,* 188 id. 182; *Bessette* v. *People,* 193 id. 346.

"Due process of law" is interchangeable with and means no more than a valid enactment. *Bailey* v. *People,* 190 Ill. 34.

"Due process of law" is synonymous with "law of the land." *Harding* v. *People,* 160 Ill. 464.

An act of the legislature which does not bind all members of the community alike, and which is not justified as

an exercise of police power, is unconstitutional. *Eden* v. *People,* 161 Ill. 303.

The exercise of the police power must be limited to such measures as are designed to promote the public health, the public morals, the public safety or the public welfare. *Chicago* v. *Netcher,* 183 Ill. 104; *Noel* v. *People,* 187 id. 587; *Webber* v. *Virginia,* 13 Otto, 346.

When it can be seen from the provisions of a statute that it has no tendency to promote the public health, safety, morals, comfort or welfare, the courts are authorized to declare it invalid. *Noel* v. *People,* 187 Ill. 587.

It is the province of the court to determine whether a statute purporting to be an exercise of a police power of the State, but taking away the property of the citizens or interfering with their personal liberty, is an appropriate measure for the promotion of the comfort, safety and welfare of society. *Ritchie* v. *People,* 155 Ill. 98.

Acts of the legislature must not conflict with the constitution, and where their ostensible object is to secure the public comfort, welfare or safety they must appear to be adapted to that end, and cannot invade the rights of persons and property under the guise of a police regulation. *Ritchie* v. *People,* 155 Ill. 98.

WILLIAM H. STEAD, Attorney General, and JOHN E. W. WAYMAN, State's Attorney, (CHARLES E. WOODWARD, and ZACH HOFHEIMER, of counsel,) for the People:

The act to regulate the manufacture and sale of substitutes for butter does not deny to any person the equal protection of the laws, nor does it amount to the taking of property without due process of law. *Dairy Co.* v. *Ohio,* 183 U. S. 238; *Powell* v. *Pennsylvania,* 127 id. 678; *McCray* v. *United States,* 195 id. 27; *Plumley* v. *Massachusetts,* 155 id. 461; *Cook* v. *State,* 110 Ala. 40; *People* v. *Rottger,* 131 Mich. 250; *Beha* v. *State,* 67 Neb. 27; *State* v. *Packing Co.* 124 Iowa, 323.

The purpose of the statute was not to discriminate in favor of butter, but to provide a ready means by which the public might know that an article offered for sale was butter and not an imitation of butter. *McCann* v. *Commonwealth*, 198 Pa. St. 509; *Bayles* v. *Newton*, 50 N. J. L. 549; *State* v. *Newton*, 50 id. 534; *State* v. *Heineman*, 80 Wis. 257; *State* v. *Packing Co.* 124 Iowa, 323.

Laws providing for the detection and prevention of imposition and fraud, as a general proposition, are free from constitutional objection. *Chicago* v. *Dairy Co.* 234 Ill. 294.

The prohibition of the manufacture or sale of an article made in imitation of butter produced from pure milk or cream, but not forbidding the manufacture or sale of such imitation product in such form as would indicate its real character to the consumer, is a valid exercise of the police power. *Powell* v. *Pennsylvania*, 127 U. S. 678; *Plumley* v. *Massachusetts*, 155 id. 461; *Schollenberger* v. *Pennsylvania*, 171 id. 1; *Dairy Co.* v. *Ohio*, 183 id. 238; *In re Scheitlin*, 99 Fed. Rep. 272; *Cook* v. *State*, 110 Ala. 40; *McCann* v. *Commonwealth*, 198 Pa. St. 509; *People* v. *Arensberg*, 105 N. Y. 123; *McAllister* v. *State*, 72 Md. 390; *State* v. *Snow*, 81 Iowa, 642; *State* v. *Aslesscn*, 50· Minn. 5; *State* v. *Bockstrick*, 136 Mo. 335.

Mr. JUSTICE DUNN delivered the opinion of the court:

The plaintiff in error was convicted in the municipal court of Chicago of a violation of the "act to regulate the manufacture and sale of substitutes for butter," (Hurd's Stat. 1908, p. 713,) by keeping for sale oleomargarine, designed as a substitute for butter and colored so as to resemble yellow butter, the product of the dairy. He seeks a reversal of the judgment on the ground of the unconstitutionality of the act under which he was convicted.

The first six sections of the act are as follows:

"Sec. 1. That for the purpose of this act, every article, substitute or compound other than (that) which is pro-

duced from pure milk or cream therefrom, made in the semblance of butter and designed to be used as a substitute for butter made from pure milk or its cream, is hereby declared to be imitation butter: *Provided,* that the use of salt and harmless coloring matter for coloring the product of pure milk or cream shall not be construed to render such product an imitation.

"Sec. 2. No person shall coat, powder or color with annatto or any coloring matter whatever, any substance designed as a substitute for butter, whereby such substitute or product so colored or compounded shall be made to resemble butter, the product of the dairy. No person shall combine any animal fat or vegetable oil or other substance with butter or combined therewith or with animal fat or vegetable oil, or combination of the two, or with either one, any other substance or substances, for the purpose or with the effect of imparting thereto a yellow color or any shade of yellow so that such substitute shall resemble yellow or any shade of genuine yellow butter, nor introduce any such coloring matter or such substance or substances into any of the articles of which the same is composed: *Provided,* nothing in this act shall be construed to prohibit the use of salt, rennet and harmless coloring matter for coloring the products of pure milk or cream from the same. No person shall by himself, his agents, or employees, produce or manufacture any substance in imitation or semblance of natural butter, nor sell or keep for sale, nor offer for sale any imitation butter, made or manufactured, compounded or produced in violation of this section, whether such imitation butter shall be made or produced in this State or elsewhere. This section shall not be construed to prohibit the manufacture and sale under the regulations hereinafter provided, of substances designed to be used as a substitute for butter and not manufactured or colored as herein provided.

"Sec. 3. Every person who lawfully manufactures any substance designed to be used as a substitute for butter, shall mark by branding, stamping or stenciling upon the top and side of each box, tub, firkin or other package in which such article shall be kept and in which it shall be removed from the place where it is produced, in a clear and durable manner, in the English language, the word 'Oleomargarine,' or the word 'Butterine,' or the words 'Substitute for Butter,' or the words 'Imitation Butter,' in printed letters in plain Roman type, each of which shall not be less than three-quarters of an inch in length.

"Sec. 4. It shall be unlawful to sell or offer for sale any imitation butter without informing the purchaser thereof, or the person or persons to whom the same is offered for sale, that the substance sold or offered for sale is imitation butter.

"Sec. 5. No person, by himself or others, shall ship, consign or forward by any common carrier, whether public or private, any substance designed to be used as a substitute for butter, unless it shall be marked or branded on each tub, box, firkin or jar, or other package containing the same, as provided in this act, and unless it be consigned by the carriers and receipted for by its true name: *Provided,* that this act shall not apply to any goods in transit between foreign States across the State of Illinois.

"Sec. 6. No person shall have in his possession or under his control any substance designed to be used as a substitute for butter, unless the tub, firkin, jar, box or other package containing the same be clearly and durably marked, as provided in this act: *Prôvided,* that this section shall not be deemed to apply to persons who have the same in their possession for the actual consumption of themselves (or) their families. Every person who shall have possession or control of any imitation butter for the purpose of selling the same, which is not marked as required by the provisions of this act, shall be presumed to have known

during the time of such possession or control the true character and name, as fixed by this act, of such product."

The remaining sections of the act refer to the manner of its enforcement.

The position of the plaintiff in error is, that the act in question is an arbitrary interference with the rights of the manufacturers of and dealers in oleomargarine in the manufacture and disposition of their product, that it denies them the equal protection of the laws, and that it amounts to a taking of their property without due process of law. The act does impose restrictions upon the manufacture, transportation, sale and possession of substitutes for butter, and the question is presented whether it is a valid exercise of the police power.

The record shows that oleomargarine is a wholesome article of food for human consumption, which without coloring does not resemble yellow butter, the product of the dairy; that the oleomargarine kept by the defendant was so colored as to resemble such yellow butter; that there was not a sufficient quantity of the coloring matter to render it in any degree unwholesome as an article of human consumption, and that the same coloring matter is used to color butter, the product of the dairy. It is argued that it is an unjust and unlawful discrimination, which the legislature has no power to make, to prohibit the use of harmless coloring matter in oleomargarine and at the same time permit its use in butter, the product of pure milk and cream, under the pretense that it is for the protection of the public health. In this counsel mistake the purpose of the act. Aside from any effect upon the public health the object of the act is, not to prohibit or discriminate against the manufacture or sale of substitutes for butter, but to regulate such manufacture and sale so as to protect the public against the sale, as butter, of a different article. With the sale, for what it is, of any substitute for butter the law does not interfere. It is only the sale under pretense that the article

sold is that which it is not that the law affects. The police power of the State is not limited to regulations necessary for the preservation of good order or the public health and safety. The prevention of fraud and deceit, cheating and imposition, are equally within the power. (*City of Chicago* v. *Bowman Dairy Co.* 234 Ill. 294.) Dealers in oleomargarine and other substitutes for butter have no vested right to palm off their products on purchasers who ask for butter as the genuine article they are seeking. The purpose of the act was to protect the public against fraud of this kind by preventing the vendor of any substitute for butter from using coloring matter therein to impose upon his customers and deceive them into believing they were purchasing butter when they were purchasing a different thing. The prevention of such a fraud by prohibiting the sale as genuine dairy butter of any article made in imitation of butter is clearly within the police power, and the prohibition of coloring the substitute to make it have the appearance of genuine butter seems a reasonable and appropriate means to such prevention. Enactments similar to this act, having for their object the regulation of the manufacture and sale of substitutes for butter, have been sustained by the courts of last resort in many jurisdictions. *Capital City Dairy Co.* v. *Ohio,* 183 U. S. 238; *Cook* v. *State,* 110 Ala. 40; *State* v. *Armour Packing Co.* 124 Iowa, 323; *McAllister* v. *State,* 72 Md. 390; *Ex parte Plumley,* 156 Mass. 236; *People* v. *Rotger,* 131 Mich. 250; *State* v. *Addington,* 77 Mo. 110; *Butler* v. *Chambers,* 36 Minn. 69; *Beha* v. *State,* 67 Neb. 27; *State* v. *Marshall,* 64 N. H. 549; *State* v. *Newton,* 50 N. J. L. 534; *People* v. *Arensberg,* 105 N. Y. 123; *State* v. *Capital City Dairy Co.* 62 Ohio St. 350; *Hathaway* v. *McDonald,* 27 Wash. 659; *Powell* v. *Commonwealth,* 114 Pa. St. 265; *State* v. *Myers,* 42 W. Va. 822.

The judgment of the municipal court is affirmed.

*Judgment affirmed.*