## WILLIS E. OVERTON

*vs.*

EMERSON C. HARRINGTON, COMPTROLLER OF THE STATE OF MARYLAND.

*Statutes: construction of—; rules for—; Chapter 828 of Acts of 1914; restricting the fishing with nets in Chesapeake Bay; license from Comptroller; mandamus.*

Chapter 828 of the Acts of 1914, in restricting the size of the mesh of fish nets, and the ownership of the boats to be used in connection therewith, has reference only to those engaged in the industry of seining for food fish.          p. 38

The Act authorizes the Comptroller to issue a license for a purse or buck net with a mesh of any size to be used in catching non-food fish; provided the applicant is the owner and operator of the net or nets.          pp. 37, 38

In construing statutes, the first canon is to ascertain the intention of the Legislature.          p. 34

To ascertain this intention, the words employed are first to be considered, and they are to be interpreted according to their plain, ordinary and natural import, with some regard to order and grammatical arrangement.          p. 35

If the language used is clear, precise and unambiguous, the Legislature is to be understood to mean what it has plainly expressed.          p. 35

But where the language is ambiguous or obscure, the courts may make use of extraneous aids to arrive at the meaning, such as a view of the subject-matter, and the necessity and object of the legislation.          p. 35

It is also a cardinal rule of construction that the courts should give effect to every part of a statute, if possible.          p. 37

Statutes must be construed also with special reference to the subject-matter legislated upon.          p. 35

*Decided April 16th, 1915.*

Appeal from the Circuit Court for Anne Arundel County.
(BRASHEARS, J.)

The cause was argued before BOYD, C. J., BRISCOE, BURKE,
THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE,
JJ.

*Tazewell T. Thomas* (with whom was *John H. Elliott* on
the brief), for the appellant.

*Nicholas H. Green,* for the appellee.

CONSTABLE, J., delivered the opinion of the Court.

The appellant sought by mandamus proceedings to compel
the Comptroller of the Treasury of the State of Maryland,
the appellee, to issue to him a license, under the provisions
of Chapter 828 of the Acts of 1914, for a purse or buck net
to be used exclusively for catching a species of non-food fish
called menhaden. Upon trial before the Court without a
jury, the petition was dismissed and from that order, this
appeal was taken.

Chapter 828 of the Acts of 1914, amending Chapter 740
of the Acts of 1908, provides:

"Section 2-A. No person shall at any time be
allowed to fish with purse nets at any point in the
Chesapeake Bay above or north of a line drawn east
from Robin's Point on the Western Shore to Handy's
Point on the Easern Shore of Maryland.

"Section 2-B. No person shall fish with purse or
buck nets within the State of Maryland south of the
line drawn from the line aforesaid due east to the
Eastern Shore without first obtaining a license so to
do from the Comptroller of the Treasury, and then
only from June 15th to November 1st of each year,
and the applicant shall pay the sum of twenty-five
dollars for each and every purse or buck net owned
and operated by him, whereupon the Comptroller shall
issue to such applicant a license or licenses to operate
such purse or buck nets, and all moneys arising from

said license shall be paid into the State Treasury for the maintenance of the State Oyster Navy, and any person failing to procure such a license and violating the provision of this section shall be guilty of a misdemeanor, and, on conviction, shall be subject to the fines and penalties imposed by section 3 of this Article and to the penalties imposed by the Statutes of Maryland for failure to procure licenses wherever required by law. It shall be unlawful to use a purse or buck net with a mesh less than three inches for the catching of food fish, and no license shall be issued by the Comptroller of the Treasury for the use of a purse or buck net with a mesh less than three inches, and unless the steam or sail boats used in connection with purse or buck nets have been owned by *bona fide* residents of the State of Maryland twelve months before the issuing of said license."

Menhaden are very small fish and cannot be caught in a net having a mesh as large as three inches; and the contention of the appellant is that the restrictions, found in the last sentence of Section 2-B, and relating to the size of the mesh and the ownership of the boats used in connection with the nets, only apply to those fishing for food fish; and that the only restriction upon those applying for purse net licenses for the purpose of catching other than food fish, other than the payment of the license money, the limits of the fishing grounds and the season, as contained in the first sentence of the section, is that found also in the first sentence of the section, to wit, that the applicant should be the owner and operator of the nets. On the other hand, the appellee contends that his authority to issue licenses is wholly contained in the Act under discussion and he can issue no license for the use of a purse or buck net with a mesh less than three inches, no difference to what use it is to be put, whether for catching food or non-food fish.

The rules for the construction of statutes are well established and defined, and they all refer to and are used for arriving at the intention of the Legislature.

As was said by this Court in *Clark* v. *Baltimore,* 29 Md. 277: "To ascertain this (intention of the Legislature), we are first to consider the words employed, and interpret them according to their plain, ordinary and natural import, having some regard to their order and grammatical arrangement. If they are clear, precise and unambiguous, the Legislature must be understood to mean what it has plainly expressed." But, where the language is obscrue or ambiguous, the Courts are not confined to it, but may make use of extraneous aids to arrive at the meaning, such as a view of the subject matter, the necessity of the legislation and the object of the Legislature. *Shehan* v. *Tanenbaum,* 121 Md. 283. The intention is to be gathered from a consideration of every part of the statute, thus, giving force and effect to it as a whole. *Miller* v. *Cumberland Cotton Factory,* 26 Md. 478; *State* v. *Archer,* 73 Md. 57. "Statutes must also be construed with special reference to the subject matter legislated upon, and with reference to the manifest mischief the Act was intended to remedy." *Mitchell* v. *State,* 115 Md. 360. These are a few of the very many cases in this State dealing with the construction of statutes, but should be sufficient for the purposes of this case.

That the language of the statute is ambiguous must be conceded. In the first portion of Section 2-B, it provides, in effect, that the Comptroller, on the application of anyone owning and operating a purse or buck net, shall issue to him a license for the use of such net during a certain season and within certain boundaries; while by the latter part of the same section, it directs that he shall issue no license for a purse or buck net with a mesh less than three inches and not then unless the boats to be used in fishing the nets have been owned by *bona fide* residents of this State.

Let us examine the contention of the appellant, that these latter restrictions apply only to those fishing for food fish. We do not have to assume that the Legislature was familiar with another industry in the fishing business other than food fisheries, for by the words of the statute, they evidenced that

knowledge by providing that it should be unlawful to use a purse net with a mesh less than three inches for the catching of *food fish;* thereby, indicating that other than food fish were sought after.

An examination of Chapter 740 of the Act of 1908, which was amended by the Act in question, throws some light upon the subject. By the preamble it appears that whereas fishing with purse nets had a tendency to decrease the stock of food fish in the Chesapeake Bay and its tributaries by causing greater quantities to be caught than were marketable, and thus allowed the best classes of fish to be sold to fertilizer factories; and whereas, the catching of fish during the spawning season had a tendency to destroy one of the most productive industries of the State, it was then enacted by Section 2-A, that no one should fish north of a certain line in the Bay at all; and by Section 2-B, that no person should fish with purse nets south of a certain line without first obtaining a license so to do from the Comptroller and that the applicant should own and operate the nets. Briefly, this Act, it appears, was designed primarily for the protection of the food fish of the State and secondarily, as a method of raising revenue for the Oyster Navy. As a means of protection, it abolished the right to fish with purse nets wherever desired, and defined the portions of the Bay where and where not such nets could be used, but placed no restriction as to time during which these nets could be used, although the preamble indicated they should be prohibited during the spawning season, and, further, made no restrictions as to the size of the mesh. By the amended or present Act, changes admittedly were made in the area of the waters wherein such nets could be used, and in the duration of time during which they could be used as applicable to all classes of fish, and expressly prohibited the use of such nets with a smaller mesh than three inches for the catching of food fish. The question is, did the Legislature intend, by expressing in the manner it did, to prohibit the Comptroller from issuing a license for a purse net with a mesh less than three inches and where the

boat was not owned twelve months by a *bona fide* resident
of the State, but was not to be used for the catching of food
fish; or did it mean those restrictions to apply only to those
fishing for food fish.

The object of the Legislature, as appears from the pre-
amble of the original Act, was solely to preserve food fish
by licensing and limiting this form of fishing. The only
natural inference to be drawn from the later legislation, is
that the prior Act was inadequate; so, therefore, still with
the intention of securing adequate protection for food fish,
more restrictions were needed. Under the prior Act, this
class of non-food fish could be caught in the defined area,
because of the right to use a purse net with a mesh of any
size. If then, the intention of the law makers was to make
this law, in its restrictions as to the size of the mesh, apply
to those fishing for either class of fish—food or non-food—
why should they have said, "it shall be unlawful to use a
purse or buck net with a mesh less than three inches for the
catching of *food* fish," and not a word as to the other class of
fish they then recognized? If what follows after the above
quotation of the language of the Act, that is, "no license shall
be issued by the Comptroller for the use of purse or buck nets
with a mesh less than three inches, etc.," was meant to be a
restriction upon the size of the mesh of nets used for both
classes of fish, then the language as to the size of mesh to
be used for food fish was useless and worthless, for the
language directing the Comptroller to issue no license for a
net less than three inches would have accomplished that. If
the omission of those words would have accomplished the
end for which the appellee contends, does their insertion mean
the same end? These words most certainly were inserted
for some purpose, and it is a cardinal rule of construction of
statutes that the Courts should give force and effect to every
part thereof when possible.

In our opinion, the first sentence of section 2-B, which is
a verbatim re-enactment of section 2-B of the original Act

in its entirety, with the exception to the addition as to area and the season, provides generally for purse net fishing, designating the area, the season, the amount of the license fee, the qualification of the applicant and the authority to the Comptroller to issue the license. It is practically a statute in itself. The Legislature, recognizing the different classes of the fish industry, intended to protect the food-fish by providing that food-fish should not be fished for but by a certain sized mesh. Having provided by the first part of the section, that purse nets could be used without mention as to the size of the mesh, then provision was intended to be made declaring it unlawful to catch food fish with a net of which the mesh was less than three inches. The restrictions following, in our opinion, refer only to those fishing for food fish. It is significant that the sentence providing the restrictions is separated from the provisions as to food fish by only a comma. It will be noted that the provision as to the ownership of the boats also follows after the food fish provision. If this qualification does not refer only to the food fish fisherman, it is difficult to account for the fact of ownership of the nets is made a qualification of the applicant in the first sentence.

We are of the opinion, therefore, that the restrictions as to the size of the mesh and the ownership of the boats to be used in connection with the use of the nets were, in the minds of the law makers, only to apply to those engaged in the industry of fishing for food fish; and that the Act contains authority for the Comptroller to issue a license for a purse or buck net with a mesh of any size to be used in catching non-food fish; provided the applicant is the owner and operator of the net or nets.

For the reasons stated, we are of the opinion that the order ought to be reversed and the cause remanded, to the end that a writ of mandamus be issued as prayed.

*Order reversed and cause remanded, with costs to the appellant.*