162 So. 533

## STATE v. KARTUS.

### 3 Div. 767.

Supreme Court of Alabama.

May 3, 1935.

KNIGHT, Justice.

Replying to the inquiry before us as to the validity of schedule 51, § 361, Gen. Acts 1919, pp. 282, 395, 411:

The above-mentioned act, in schedule 51, § 361, attempts to impose a license tax of $100 on any person, firm, or corporation who "shall sell or be engaged in the business of selling goods, wares, merchandise, or other personal property, such sales being advertised as bankrupt, insolvent, insurance, assignee, trustee, testator, executor, administrator, receiver, auction, syndicate, railroad or other wreck, wholesale or manufacturers' or closing out sale, or as goods damaged by smoke, fire, water or otherwise," and the act requires that such person, firm, or corporation shall file an application with the probate judge of the county where such sale is held, or to be held, for a license, which application shall be accompanied by an affidavit stating all the facts, relating "all the reasons for and character of such sale so advertised and represented, and including the statement of the names of the persons from whom the goods, wares and merchandise, or other personal property was obtained, the date of delivering to the person applying for such license and the place from which said goods, wares and merchandise, or other personal property was last taken or bought and all details necessary to exactly locate and fully identify the said goods, wares and merchandise, or other personal property."

The act expressly provides it shall not apply to "bona fide sales of general assignees for the benefit of creditors, or bona fide trustees selling under power of sale in any deed of trust or mortgage or lien, executors and administrators selling the goods of their decedent, or to any other officer selling the property under legal process, or to regularly licensed auctioneers selling bona fide at public outcry in the usual course of their business."

It is apparent from the provisions of the act, now before us for consideration, that it was deemed proper by the Legislature that the business taxed, under schedule 51, should be supervised to the end that frauds and deceits should not be practiced upon the public. To this extent, at least, the police power of the state is involved, as well as the sovereign power to tax for the purpose of raising revenue to meet the legitimate expenses and needs of the government.

In a large measure the act, in the respect under consideration, is regulatory, and in no sense a prohibition of the business.

The necessities of the case do not require a determination of whether the tax

imposed was wholly to cover reasonable expenses of supervision, or was intended for the combined purpose of supervision and revenue. Courts now recognize the right to combine the police regulations and the taxing power. City Council of Montgomery v. Kelly, 142 Ala. 552, 38 So. 67, 70 L. R. A. 209, 110 Am. St. Rep. 43.

■ The police power of the state is not limited to regulations necessary for the preservation of good order, or the public health and safety. "The prevention of fraud and deceit, cheating and imposition are equally within the police power of the State, and the legislature may prescribe all such regulation as, in its judgment, will secure, or tend to secure, the people against the consequences of fraud." 6 R. C. L. § 202, p. 208; People v. Freeman, 242 Ill. 373, 90 N. E. 366, 17 Ann. Cas. 1098; People v. William Henning Co., 260 Ill. 554, 103 N. E. 530, 49 L. R. A. (N. S.) 1206; Hawker v. People of New York, 170 U. S. 189, 18 S. Ct. 573, 42 L. Ed. 1002.

No one, at this time, we take it, would have the temerity to undertake to define the "police power" of a state, or mark its limitations. As was wisely observed by Mr. Justice Brown in Camfield v. United States, 167 U. S. 518, 524, 17 S. Ct. 864, 866, 42 L. Ed. 260, citing Rideout v. Knox, 148 Mass. 368, 19 N. E. 390, 2 L. R. A. 81, 12 Am. St. Rep. 550: "The police power is not subject to any definite limitations, but is co-extensive with the necessities of the case and the safeguard of the public interests."

"It by no means is true that every law is void which may seem to the judges who pass upon it excessive, unsuited to its ostensible end, or based upon conceptions of morality with which they disagree," (Otis v. Parker, 187 U. S. 606, 23 S. Ct. 168, 170, 47 L. Ed. 323); or as put by Mr. Justice Holmes in Arizona Employer's Liability Cases (Arizona Copper Co. v. Hammer, 250 U. S. 400, 432, 39 S. Ct. 553, 560, 63 L. Ed. 1058, 1071, 6 A. L. R. 1537): "If it is thought to be public policy to put certain voluntary conduct at the peril of those pursuing it, whether in the interest of safety or upon economic or other grounds, I know of nothing to hinder."

■ This must not be understood as putting every regulation touching the police power within legislative competence, and to prevent judicial interference with legislative action. Such is not the case for the power is still with the courts to determine whether legislative action conflicts with the organic law, or is arbitrary and unreasonable, and, therefore, void.

And in Home · Telephone & Telegraph Co. v. Los Angeles, 211 U. S. 265, 29 S. Ct. 50, 55, 53 L. Ed. 176, it was observed by Mr. Justice Moody, in speaking for the court, that "it is a well-settled rule of constitutional exposition that, if a statute may or may not be, according to circumstances, within the limits of legislative authority, the existence of the circumstances necessary to support it must be presumed."

■ In the exercise of the police power, citizens may, for the public good, be constrained in their conduct with reference to matters in themselves lawful and right. City of Butte v. Paltrovich, 30 Mont. 18, 75 P. 521, 104 Am. St. Rep. 698; Rifle Potato Growers' Co-Op. Ass'n v. Smith, 78 Colo. 171, 240 P. 937; Pohl v. State, 102 Ohio St. 474, 132 N. E. 20; City of Des Moines v. Manhattan Oil Co., 193 Iowa, 1096, 184 N. W. 823, 826, 188 N. W. 921, 23 A. L. R. 1322.

In the case of City of Des Moines v. Manhattan Oil Co., supra, in writing of the police power of the state, it was observed: "With the changing conditions necessarily attendant upon the growth and density of population and the ceaseless changes taking place in method and manner of carrying on the multiplying lines of human industry, the greater becomes the demand upon that reserve element of sovereignty which we call the police power for such reasonable supervision and regulation as the state may impose, to insure observance of the individual citizen of the duty to use his property and exercise his rights and privileges with due regard to the personal and property rights and privileges of others. * · * *

"Naturally what regulations may reasonably be required or imposed for that purpose by the constituted authorities varies with the varying conditions with which our lawmakers have to deal and subject only to constitutional limitations, the state, acting by its Legislature, has the right to select the subjects of regulation and prescribe rules for making such regulations effective. To justify the exercise of such authority it is not necessary that the subject thereof shall be inherently wrong;

nor is the fact that such regulation may operate to restrict the individual citizen in the use of his own property, or even in his liberty, * * * of itself sufficient to render the regulation or restriction void. Dillon Mun. Corp. (4th Ed.) 141; Lawton v. Steele, 152 U. S. 133, 136, 14 S. Ct. 499, 38 L. Ed. 385; Barbier v. Connolly, 113 U. S. 27, 5 S. Ct. 357, 28 L. Ed. 923; Powell v. Pennsylvania, 127 U. S. 678, 8 S. Ct. 992, 1257, 32 L. Ed. 253; Welch v. Swasey, 214 U. S. 91 [29 S. Ct. 567, 53 L. Ed. 923]; Northwestern Laundry v. Des Moines, 239 U. S. 486, 36 S. Ct. 206, 60 L. Ed. 396; Booth v. Illinois, 184 U. S. 425, 22 S. Ct. 425, 46 L. Ed. 623.

"The power to designate the subject of police regulation rests in the state alone, and if a given statute is not clearly repugnant to some constitutional guaranty, the courts are without power to interfere. Such interference, if tolerated at all, must be on the theory that the subject of the regulation is not within the legislative jurisdiction; or, if the subject be one within such jurisdiction, it must appear to the court that, looking through mere forms and at the substance of the matter, it can say that the statute enacted professedly in the interest of the public or general welfare has no 'substantial relation to that object, but is a clear, unmistakable infringement of rights secured by the fundamental law.' Booth v. Illinois, supra; Overton v. Harrington, 126 Md. 32, 94 A. 325."

That the Legislature had in mind some evil, or wrong that it thought should be checked, or guarded against, we have no reason to doubt, when it enacted the statute imposing the license tax upon such person, firm, or corporation included within the terms of the act; that frauds might be practiced upon the unsuspecting and gullible public, who, thinking that they would be able to purchase goods at less cost, might be attracted by the advertisement, which in fact was false, we likewise have no doubt. To prevent the possibility of such a fraud, parties engaged in such business were required to procure a license, and before such license could issue, a showing verified by affidavit was required. This requirement unmistakably demonstrates that the Legislature thought that the business required, and should have, supervision. To cover the expense and cost of such supervision, no doubt a tax or license fee was required.

Counsel for appellee, Nathan Kartus, has brought to our attention the case of People ex rel. Moskowitz v. Jenkins, 202 N. Y. 53, 94 N. E. 1065, 35 L. R. A. (N. S.) 1079, and makes the point that the statute, which the New York Court of Appeals pronounced void, both as an attempt on the part of the Legislature to exercise the right of police power, as well as the taxing power of the state, was practically on all fours with the statute before us. If such was in fact the case, we do not know that we would be inclined to follow the pronouncement in that case, but the statute is not identical.

In the statute under consideration, the Legislature has made ample provision for supervision, to protect the public from imposition and fraud, by requiring an affidavit, giving full particulars as to the goods to be sold. That the goods to be sold were in fact as represented, the law requires that the licensee shall not only commit his conscience thereto, but shall make solemn oath in support of the representations. This oath, if willfully, corruptly, and falsely made, constitutes perjury by section 5167 of the Code. No such provision is made in the New York statute, and this fact is indirectly alluded to in the opinion in the New York case.

[6] It is not a violation of either the Federal or State Constitution to prohibit a person from misrepresenting what he has to sell in order to impose upon purchasers, even if the subject of the sale is an article just as good as the one it is represented to be. The command is valid which tells him he must not deceive the public in any way in order to sell his wares. People v. Girard, 145 N. Y. 105, 109, 39 N. E. 823, 45 Am. St. Rep. 595.

The prohibition or regulation "touches no honest man or honest act, but merely restrains the practice of fraud in order to protect purchasers who buy on the strength of representations made and are entitled to what they pay for." People of State of New York v. Luhrs, 195 N. Y. 377, 89 N. E. 171, 173, 25 L. R. A. (N. S.) 473, 16 Ann. Cas. 871.

The case of Davidson v. Phelps, 214 Ala. 236, 107 So. 86, may be read with interest in this connection, not that it is directly in point, but it shows the trend of the courts to uphold statutes enacted under the police power for the purpose of protecting the public from impositions and frauds.

In the case of Western Union Telegraph Co. v. City of Decatur, 16 Ala. App. 679, 81 So. 199, it was pertinently observed: "It is universally recognized that the power to tax for revenue is essentially an attribute of sovereignty conferred by the people, through the Constitution, on the state, and vested in the legislative department, which it may exercise within constitutional limitations without restraint or judicial supervision. Phoenix Carpet Co. v. State, 118 Ala. 143, 22 So. 627, 72 Am. St. Rep. 143; Barefield v. State [16 Ala. App. 491] 79 So. 396; Dunlap v. State [16 Ala. App. 440] 78 So. 638. And the courts recognize the right of the state to so combine the exercise of this power with the power of police as to embarrass and destroy businesses and occupations recognized as being hurtful to public morals, productive of disorder or injurious to the public good. City Council of Montgomery v. Kelly, 142 Ala. 552, 38 So. 67, 70 L. R. A. 209, 110 Am. St. Rep. 43; Cooley on Taxation (2d Ed.) p. 20; Tiedeman on Limitation of Police Power, 273, 277, 278."

■■ Of course, this power may not be so used as to destroy useful and harmless trades. It is the common right of every citizen to pursue any useful and harmless occupation, and to conduct the business in his own way, without unjust discriminative taxation. However, when any business, lawful in nature, is such that it may be conducted in a way as to become hurtful to the public, or when supervision is necessary to confine it to legitimate channels, the state has the undoubted right to throw around it such safeguards as will fully protect the public.

In the case of Republic Iron & Steel Co. v. State, 204 Ala. 469, 86 So. 65, 68, Chief Justice Anderson, writing for the court, observed: "In the levy of a privilege or license tax the Legislature is not restricted as to the trades, businesses, or occupations which it may select, or the amount levied, so long as it does not discriminate between members of the same class, that is, those similarly situated, and the tax must not be so exorbitant as to prohibit or oppress or restrain a legitimate and useful trade, business, or occupation, as distinguished from a certain class which, while tolerated is recognized as being hurtful to public morals, productive of disorder, or injurious to the public. City

Council of Montgomery v. Kelly, 142 Ala. 552, 38 So. 67, 70 L. R. A. 209, 110 Am. St. Rep. 43; Standard Chemical Oil Co. v. City of Troy, 201 Ala. 89, 77 So. 383, 387, L. R. A. 1918C, 522; Gamble v. City Council of Montgomery, 147 Ala. 682, 39 So. 353. So long as a privilege or license tax upon the legitimate line of trade, occupation, and business does not violate either of the foregoing requirements, it is in no sense governed, controlled, or restrained, by our constitutional provisions which relate to a direct property tax, as distinguished from a license, privilege, or occupation tax. Authorities, supra."

In the above case it was urged that, inasmuch as the act levying the license tax did not include persons operating wagon mines, it violated the organic law, federal and state, because it arbitrarily discriminated between those operating wagon mines and those who did not. On this point, the court held: "The act does not apply to 'wagon mines which do not load said coal in or on railroad cars, boats or barges,' and therefore discloses a discrimination or classification; but this court must presume that it is reasonable, and not arbitrary, unless the contrary appears, which is not the case. Of course, there can be no discrimination between members of the same class—that is, those similarly situated—and the Legislature cannot make a fanciful or capricious classification; but it can reclassify members of a general class, so long as there may be a substantial, as distinguished from a fictitious, basis for doing so."

■ Applying the foregoing principle to the act in question, it is not objectionable, viewed even in the light of an act for raising revenue.

■ We see nothing in the act, so far as schedule 51, § 361, is concerned, which is obnoxious to either section 1 or section 35 of the State Constitution.

■ We entertain no sort of doubt that the imposition of the license provided for in schedule 51 of section 361 does not violate either the "equality clause" or the "due process clause" of the Fourteenth Amendment to the Federal Constitution.

The cases of Rast, Tax Collector, v. Van Deman & Lewis Co., 240 U. S. 342, 36 S. Ct. 370, 60 L. Ed. 679, L. R. A. 1917A, 421, Ann. Cas. 1917B, 455; and Tanner, At-

torney General, v. Little, 240 U. S. 369, 36 S. Ct. 379, 60 L. Ed. 691, are conclusive, in our opinion, against any contention that the act, in so far as it is here involved, violates either the due process or equality clauses of the Fourteenth Amendment.

There is no conflict in the holding in the cases of City Council of Montgomery v. Kelly, supra, and Alabama Coal & Iron Co. v. Herzberg, 177 Ala. 248, 59 So. 305, and the case now before the court. Clearly the statutes construed in the above-named cases were designed as revenue measures, pure and simple, and placed an unjust burden upon the parties in the matter of the conduct of their business.

It follows that our answer to the Court of Appeals must be that schedule 51 of section 361 of the act in question was a valid exercise of legislative power, and is constitutional, at least so far as sections 1 and 35 of the State Constitution are concerned; nor does it conflict with the Fourteenth Amendment to the Federal Constitution.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.