[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 714 
Defendant, McMillan Lane, Commissioner of Agriculture and Industries for the State of Alabama, and intervenor, Alabama Highway Authority, appeal from a judgment for plaintiffs, Gurley Oil Company and Gurley Refining Company, Inc., which declared that Act 1403, Regular Session, Acts of Alabama 1971, violates § 45, Constitution of Alabama 1901, and held that Gurley Refining was entitled to a refund of inspection fees paid. Alternatively, the Court held that, even if Act 1403 is constitutional, the rerefined lubricating oil sold in Alabama by Gurley Refining was the "same product" as the virgin oil on which the inspection fees had previously been paid because it had been reprocessed from waste oil collected in Alabama and consequently that the rerefined lubricating oil sold by Gurley Refining in Alabama was exempt from payment of the inspection fee under § 9 (h) of Act 1403. We reverse and remand.
I. Constitutionality of Act 1403
The trial court held that Act 1403 violates the provision of § 45, Constitution of Alabama 1901, which requires that "[e]ach law shall contain but one subject, which shall be clearly expressed in its title. . . ."
The title to Act 1403 is as follows:
 "To provide for inspection of certain petroleum products, including those commonly known as gasoline, naphtha, diesel fuel, kerosene and lubricating oil, that are sold, offered for sale, used or stored in the State of Alabama; to provide for the issuance by the Commissioner of Agriculture and Industries of permits for selling, offering for sale, storing, or using such petroleum products and to require the making of applications for such permits and payment of a permit fee; to authorize the Board of Agriculture and Industries to establish minimum standards for such petroleum products; to require compliance with such standards; to provide for enforcement of this act, including provisions for maintenance of records and for labeling, sampling and testing such products, provisions prohibiting adulteration thereof, and provisions for penalties for violation of this act; to prohibit the sale, offering for sale, storage or use in this State of petroleum products not meeting the said standards; to impose an inspection fee in respect of each such petroleum product; to provide for the disposition of such inspection fees and any penalties collected under this act; to provide that violation of this act constitutes a misdemeanor; and to repeal Article 21 of Chapter 1 of Title 2 of the Code of Alabama of 1940 and subdivision 2 of Article 26 of the said Chapter 1." [Emphasis supplied.]
The court held that Act 1403, while described in its title as providing for "inspection fees," is in fact a revenue-producing tax measure because the revenue generated *Page 715 
far exceeds what is necessary to administer the inspection program and the excess revenue was, by a subsequent act, pledged for payment of bonds issued by the intervenor, Alabama Highway Authority, to provide funds for highway construction. In support of the trial court's judgment, plaintiffs Gurley argue that the title does not clearly express the act's subject, but mischaracterizes it, and that the act actually contains two subjects, one relating to an inspection program for petroleum products, the other relating to funding of the state's highway construction program. Section 11 of Act 1403 provides that the first $55,000 of the monthly proceeds from the inspection fee goes to the agricultural fund and that the residue goes to the road and bridge fund.
Regarding the requirement of § 45 that each law shall contain but one subject, we conceive the issue presented is whether an act providing for an inspection program and for the levying of inspection fees contains more than one subject where the proceeds from the inspection fees greatly exceed the amount necessary to fund the inspection program and where the excess revenue is allocated in the act to the road and bridge fund.
We hold that the act does not contain more than one subject. The one subject is the inspection program. The levying and disposition of inspection fees is part and parcel of the inspection program. It is not necessary that the legislature so calculate the inspection fee that it produce no more revenue than necessary to fund the inspection program. The state has the right to combine the exercise of its police power and its taxing power. Alabama Power Co. v. City of Carbon Hill,234 Ala. 489, 493, 175 So. 289 (1937); State v. Kartus, 230 Ala. 352,353-54, 162 So. 533 (1935).
Furthermore, an act does not contain more than one subject merely because it provides for more than one use of the revenue collected under the act. Opinion of the Justices, 270 Ala. 38,42, 115 So.2d 464 (1959). To uphold the trial court's judgment would unduly handicap the legislature in the exercise of its legitimate prerogatives and would not serve the purposes of § 45 in our judgment. Opinion of the Justices, 275 Ala. 254,154 So.2d 12 (1963).
With respect to the requirement of § 45 that the one subject of a law be clearly expressed in its title, we consider the issue is whether the title to an act such as the one described above clearly expresses the subject of the act where the title does not state that the act will produce revenue in excess of that necessary to fund the program provided for in the act. We hold that it is sufficient for the title to state that the act imposes an inspection fee and provides for the disposition of the funds collected.
The title need not be an index or catalog of every power bestowed in the act, nor of every effect of the act. Opinion ofthe Justices, 262 Ala. 345, 349, 81 So.2d 277 (1955).
This Court has held that the title of an act levying a tax on persons selling malt or brewed beverages which stated that the act was "to provide for the collection and distribution of the proceeds of said tax" satisfied § 45. Opinion of the Justices,275 Ala. 254, 154 So.2d 12 (1963).
Although the title to Act 1403 speaks of a "fee" rather than a "tax," it makes no difference, because, as we have already stated, the state has the right to combine the exercise of its police power with that of its taxing power. Furthermore, this Court has held that a license fee may include an amount added for revenue. Alabama Power Co. v. City of Carbon Hill, supra. Consequently, the use of the term "fee" does not mean that an amount has not been added for revenue, and a title which uses the term "fee" when an amount has been added for revenue is not misleading and does not mischaracterize the subject of the act, in our considered judgment.
II. The "Same Product" Issue
Section 9 (h) of Act 1403 provides,
 ". . . The inspection fee herein provided for shall be paid but once with respect to the same product,. . . ." [Emphasis supplied.] *Page 716 
The rerefined lubricating oil which Gurley Refining sold in Alabama was processed exclusively from waste oil acquired from a supplier located in Alabama. The supplier "certified" to Gurley Oil that he had collected the waste oil only from service stations located within Alabama.
The Gurleys' expert witness testified that rerefined oil produced from waste oil is the "same product" as the virgin oil because it has the same molecular structure before it is used and after it is reprocessed. Other experts testified that rerefined oil is not the "same product" as the virgin oil because rerefined oil does not have the same physicalcharacteristics and does not contain the same chemicaladditives as the virgin oil.
The trial court apparently accepted the testimony of the Gurleys' expert and also assumed that the inspection fee had been previously paid on all of the waste oil from which the rerefined oil was produced. The court held that, since the rerefined oil was the "same product" on which the inspection fee had originally been paid, to require payment of the inspection fee on the rerefined oil would be to require payment more than once with respect to the "same product."
We hold that rerefined lubricating oil is not the "same product" as the virgin lubricating oil which, after being used, has been reprocessed to produce the rerefined lubricating oil. It is irrelevant whether both have the same basic molecularstructure or the same chemical composition. Whether the virgin oil and the rerefined oil are basically the same oil or not, they are not the "same product," as the term is used in § 9 (h) of Act 1403.
Just because the materials used to make a product are recycled over and over again does not make the result of each remanufacturing process the "same product." We hold that the result of each such reprocessing is a "new product."
The interpretation given to "same product" by the trial court and plaintiffs Gurley is inconsistent with the purpose of the act and the nature of the fee imposed. The act establishes aninspection program and imposes an inspection fee. An inspection is necessary every time the product of such a refining or rerefining process enters the market to determine whether that particular product meets the standards established by the state.
Section 2 of Act 1403 provides that persons selling, offering for sale, storing, or using petroleum products in this state must obtain a permit. In § 2, it is also provided:
 ". . . This section shall not apply to any person selling or offering for sale or storing or using petroleum products obtained from a person that has compiled [sic] with the provisions of this act with respect to the same petroleum products."
If "same petroleum products" means here what the trial court and plaintiffs say that "same product" means in § 9 (h), then a person selling, storing, or using rerefined lubricating oil which had been reprocessed from waste oil collected in Alabama would not need to get a permit. That conclusion is not consistent with the purpose of the act.
We think that the intent of the legislature is that the person first selling, storing, or using any petroleum products in the state must comply with the provisions of the act, including payment of the inspection fee, and that those persons obtaining petroleum products from such a person need not also
comply with the act. Thus, in § 9 (h), the act provides,
 ". . . It shall be the duty of the person first selling or storing or using any petroleum product in the state to pay said inspection fee. . . . The inspection fee herein provided for shall be paid but once with respect to the same product,. . . ."
The provision in question has nothing to do with encouraging recycling of petroleum products; it merely attempts to prevent the imposition of double liability for the inspection fee.
It is therefore that we reverse and remand this cause to the trial court for the *Page 717 
entry of a judgment in conformity herewith.
REVERSED AND REMANDED.
JONES, ALMON, EMBRY and BEATTY, JJ., concur.