THE PEOPLE OF THE STATE OF NEW YORK ex rel. PHILIP
MOSKOWITZ, Appellant, v. FRED JENKINS, as Chief of
Police of the City of Glens Falls, Respondent.

Constitutional law — invalidity of statute (General Municipal
Law, § 85) requiring certain transient retail dealers to obtain
licenses from local authorities before doing business.

Section 85 of the General Municipal Law (Consol. Laws, chap. 24),
which provides that no person shall conduct a transient retail
business in any store in any city of the third class, village or town
of this state for the sale of goods which shall be represented or
advertised as a bankrupt stock, or as assigned stock, or as goods
damaged by fire, water or otherwise, or by any such like representa-
tion or device, without first taking out a license therefor, cannot
be sustained as an exercise of either the police power or of the
power of taxation, and, hence, is unconstitutional and the action
of city authorities thereunder invalid.

*People ex rel. Moskowitz* v. *Jenkins*, 140 App. Div. 786, reversed.

(Argued March 15, 1911; decided April 25, 1911.)

APPEAL from an order of the Appellate Division of the
Supreme Court in the third judicial department, entered
December 3, 1910, which affirmed an order of Special
Term dismissing a writ of habeas corpus and remanding
the relator to custody.

The facts, so far as material, are stated in the opinion.

*Henry W. Williams* for appellant.    Assuming the sub-
ject-matter is within the police power, yet the act must
fail because it is not a valid regulation thereunder in that
it denies the relator the equal protection of the laws.
(U. S. Const. 14th amend. § 1; *Wright* v. *Hart*, 182
N. Y. 330; *Matter of Jacobs*, 98 N. Y. 98; *People* v. *Wil-
bur*, 198 N. Y. 1; *City of Buffalo* v. *Linsman*, 113 App.
Div. 584; *People* v. *Williams*, 189 N. Y. 131; *People* v.
*Hawkins*, 157 N. Y. 1; *People* v. *Raynes*, 136 App. Div.
417; *People* v. *Gilbert*, 68 Misc. Rep. 48; *City of Water-
town* v. *Rodenbaugh*, 112 App. Div. 723; *Lochner* v. *Peo-*

*ple,* 198 U. S. 45.) The statute in question does not purport to be a regulation under the police power nor does it in fact regulate. (*Health Dept.* v. *Rector,* 145 N. Y. 32; *Matter of Jacobs,* 98 N. Y. 98; *People* v. *Gillson,* 109 N. Y. 389; *Colon* v. *Lisk,* 153 N. Y. 188; *People ex rel.* v. *Warden,* 157 N. Y. 116; *People ex rel. Schwab* v. *Grant,* 126 N. Y. 473; *People* v. *Dept. of Health,* 117 App. Div. 856; *N. Y. Athletic Club* v. *Wurster,* 19 Misc. Rep. 443.) A statute cannot be sustained under the police power unless it is reasonable. The present enactment is unreasonable and the fee is excessive. (*City of Rochester* v. *West,* 164 N. Y. 510, 514; *City of Buffalo* v. *Collins Banking Co.,* 39 App. Div. 432; *People* v. *Rings,* 197 N. Y. 143, 149; *Colon* v. *Lisk,* 153 N. Y. 188, 196; *Grossman* v. *Caminez,* 79 App. Div. 15, 20; *People* v. *Jarvis,* 19 App. Div. 466, 467; *City of New York* v. *Hexamer,* 59 App. Div. 4, 7.) The legislation in question is not within the police power. (*Colon* v. *Lisk,* 153 N. Y. 188, 196; *People* v. *Beattie,* 96 App. Div. 383; *People* v. *Gillson,* 109 N. Y. 389; *People ex rel.* v. *Zimmerman,* 102 App. Div. 103; *People* v. *Ringe,* 197 N. Y. 143; *Health Dept.* v. *Rector,* 145 N. Y. 32, 40; *Matter of Jacobs,* 98 N. Y. 98, 110.)

*J. Edward Singleton* for respondent. Section 85 of the General Municipal Law is constitutional. (*People ex rel. Schwab* v. *Grant,* 126 N. Y. 473; *People ex rel. Lodes* v. *Dept. of Health,* 189 N. Y. 187; *People ex rel. Liberman* v. *Vandecarr,* 190 U. S. 552; *People ex rel. Rota* v. *Baker,* 136 App. Div. 7; *People ex rel. Comisky* v. *Wurster,* 14 App. Div. 556; *People ex rel. Armstrong* v. *Warden, etc.,* 183 N. Y. 223; *People ex rel. Duryea* v. *Wilber,* 198 N. Y. 1; *Mayor, etc.,* v. *E. M. Co.,* 102 N. Y. 593.)

CULLEN, Ch. J. The relator was arrested for conducting a transient retail business in the city of Glens Falls for the sale of goods represented and advertised as a bank-

rupt stock without having obtained a license as required by section 85 of the General Municipal Law. Thereupon he sued out a writ of habeas corpus which, after a hearing on the return day, was dismissed and the relator remanded to custody. On appeal this order was affirmed at the Appellate Division by a divided court. The sole question in the case is the constitutionality of the statute and the validity of the action of the city authorities thereunder.

The section of the law is as follows : "No person whether acting as principal or as agent for another, shall conduct a transient retail business in any store in any city of the third class, village or town of this state for the sale of goods which shall be represented or advertised as a bankrupt stock, or as assigned stock, or as goods damaged by fire, water or otherwise, or by any such like representation or device, without first taking out a license therefor from the mayor of such city, president of such village or the supervisor of such town. The amount of the fee for such license in any city shall be fixed by resolution duly passed by the board of aldermen or common council, and in a village by resolution duly passed by the board of trustees of such village; and in a town by resolution of the town board of such town. Such fee shall not be less than twenty-five dollars nor more than one hundred dollars per month in a city or an incorporated village, and not less then ten dollars nor more than fifty dollars per month in a town. No such license shall be issued for a less period than one month and it shall be renewed monthly during the continuance of such business. The sum paid as license fees shall, in a city or village, be paid to the treasurer of such city or village, and in a town to the supervisor thereof, to be used for city, village or town purposes. Any person as principal or agent conducting a transient retail business as described in this section, without obtaining a license therefor, shall be guilty of a misdemeanor and upon conviction thereof shall be fined a sum not less than

one hundred dollars nor more than two hundred dollars, and in default of the payment thereof shall be imprisoned for a period of not more than sixty days."

Acting under this provision, the city of Glens Falls, which is one of the third class, passed an ordinance fixing the license fee at $100 a month. If the statute can be sustained as an exercise either of the police power or of the power of taxation, the decisions below are right and must be affirmed. We think it can be upheld from neither point of view and shall first consider it as enacted under the police power. Of course I shall not attempt to define either the extent or the limits of that power, as that is a task that has thus far not been successfully essayed. Nor shall I refer to many of the decisions which have passed upon the validity or invalidity of legislative enactments as within or extending beyond the limits of the police power. The only branch of that power under which it is contended that the present statute can be upheld is for the prevention of fraud. If it is reasonably, though mistakenly, directed to that object, it is good. It seems to me, however, to have no such purpose. It is said that the representation that the goods in question are a bankrupt or damaged stock induces customers to believe that they are of a high grade or quality and will be sold cheap, and for much less than their original cost, while as matter of fact they are of an inferior grade. That the representation may induce customers to believe that they can get a bargain may be assumed, but the representations enumerated in the statute have no relation to the quality and character of the goods, or, if any, certainly not to enhance or exaggerate such character. It can be readily seen how a statement that a stock of goods had not been damaged by fire, water or otherwise might constitute a fraudulent representation as to their character or condition, but it is not easily perceived how a statement that they had been damaged could constitute such. But even though a statement that the goods had been damaged would be held an

immaterial allegation in an action at law for fraud, I concede that no vendor has a right to tell a falsehood as to his goods, be it material or immaterial, and that the legislature may properly pass laws to prevent or punish false statements. The legislation before us does nothing of the kind. If the man pays his license fee he may sell the goods without penalty, though his statement that they are damaged or bankrupt stock is entirely untrue. He may utter any falsehood concerning his goods other than those mentioned in the statute, and he may sell without license fee. But a vendor may own goods which have been purchased at a sale of a bankrupt or damaged by fire, and he has the unqualified right to sell them and the unqualified right to tell the truth about them. He cannot under the exercise of the police power be prohibited from enjoying both these rights. "The right to buy, sell, barter and exchange property is a necessary incident to its ownership, and, subject to reasonable regulations, is as much protected by this provision of the constitution as is the ownership itself." (*City of Carrollton* v. *Bazzette*, 159 Ill. 283.) In that case an ordinance enacted by the city authorities, under a statute which empowered the trustees to license, tax, regulate, suppress or prohibit itinerant merchants and transient vendors of merchandise, fixed the license fee for itinerant merchants at $10 a day. It was held unreasonable and void ; that as the city had no power to prohibit or suppress directly the business of the defendant, it had no power to do so indirectly by the imposition of unreasonable and oppressive burdens. If the statute provided that the transient trader should, as a condition of obtaining the license, make proof to the local authorities that the facts stated as to his stock of goods were true, and thereupon be subjected to a reasonable license fee covering the expense to which the municipality had been put, the statute would be upheld. But the exaction of $100 as a license fee for a month or for less than a month in villages and cities of the third class (and

this statute is confined to such municipalities and towns) — a sum exceeding the monthly rent of the majority of stores in such villages or cities — is too exorbitant to be upheld as a license fee in the strict sense of that term. These features of the statute plainly show its purpose, which was not to safeguard customers against fraud, but local shopkeepers from competition. The statute is of the same kind as that condemned by this court in *People* v. *Gillson* (109 N. Y. 389). There the defendant was prosecuted under a statute making it a misdemeanor for the vendor of an article of food to make sale of the same upon any inducement that anything would be delivered as a premium, prize or gift to the purchaser. The statute was held void on the authority of *Matter of Jacobs* (98 N. Y. 98) and *People* v. *Marx* (99 N. Y. 377). Judge PECKHAM said of the statute: "It is evidently of that kind which has been so frequent of late, a kind which is meant to protect some class in the community against the fair, free and full competition of some other class, the members of the former class thinking it impossible to hold their own against such competition, and therefore flying to the legislature to secure some enactment which shall operate favorably to them or unfavorably to their competitors." (p. 399.)

As already conceded, the device of selling goods as bankrupt or damaged stock does excite the cupidity or economical instincts of customers and does tend to draw custom from other merchants, but a customer has the right to buy where he can buy cheap, and his means may unfortunately be so narrow that he is constrained to purchase damaged or unfashionable goods. The great department shops of New York do practically the same thing as that restrained by the statute. They advertise a reduction in prices of stock which they have been unable to freely dispose of, often to a point below cost. Every one has the right to adopt such means to sell his goods and conduct his business as he finds most profitable

to him, provided those means are honest, and the fact that some persons engaged in the same business are dishonest does not justify legislation prohibiting either directly or indirectly the business. (*People ex rel. Tyroler* v. *Warden, etc.*, 157 N. Y. 116; *Wright* v. *Hart,* 182 id. 330.)

The counsel for the respondent relies largely on the authority of *People ex rel. Schwab* v. *Grant* (126 N. Y. 473), where it was held that to pursue the business of an auctioneer in the city and county of New York a license was necessary, and that it was discretionary in the mayor whether to grant or refuse a license. It must be always remembered that law, even constitutional law, rests not wholly on principle, but in part on custom and tradition. A tourist from another planet might at first be unable to perceive why a citizen has the inalienable right to raise and possess chickens at all times, and yet can be deprived of that right as to partridges. But if he pursued his historical study of game laws back to the times when a common man ran greater danger of capital punishment for killing a deer than for killing a human being, he would understand how the distinction came to exist. Chief Judge RUGER in the *Schwab* case shows that during and ever since colonial times the calling of auctioneer had been regarded as a vocation not open to all, but subject to special license and authority.

It is undoubtedly true that the legislature may impose on professions, callings, businesses and vocations license fees for the purpose of revenue, and though termed license fees, they are enacted not under the police power, but under the power of taxation. There exists also in the legislature the right to classify vocations or businesses for the purpose of taxation. One class may be taxed at one rate and another class at another rate. But the right to classify, though very broad, is not absolutely unlimited. In *People ex rel. Farrington* v. *Mensching* (187 N. Y. 8) we held that a law imposing a tax upon the sale and transfer of shares

of stock at a specific rate per share instead of upon its real or nominal value was not a justifiable classification. Judge VANN, in writing for this court, and referring to the United States Supreme Court, said : "By this we do not understand that great court to mean that the relation must necessarily be 'reasonable and proper' according to the judgment of reviewing judges, but that the court must be able to see that legislators could regard it as reasonable and proper without doing violence to common sense. In other words, there must be enough reason for it to support an argument, even if the reason is unsound." (p. 22.) We held the same doctrine in *Matter of City of New York* (190 N. Y. 350). Treating the statute and the ordinance passed under it as an exercise of the taxing power (though I have no idea it ever was intended as such), the classification is plainly arbitrary and unreasonable. Transient retailers might be subjected to a reasonable tax, but why a retailer who said his goods were bankrupt or damaged stock should be taxed $100 in a month, and a transient dealer who refrained from such statement should be taxed nothing, I am at a loss to imagine on any theory of taxation, though as a statute to prevent competition, the reason for the distinction is apparent.

The orders of the Appellate Division and of the Special Term should be reversed and the relator discharged from custody.

VANN, WERNER and WILLARD BARTLETT, JJ., concur; HISCOCK and CHASE, JJ., dissent on opinion of HOUGHTON, J., at Special Term; HAIGHT, J., absent.

Orders reversed, etc.