# SUPREME COURT — SPECIAL TERM — SULLIVAN COUNTY.

## September, 1922.

## CONRAD ROBINSON v. J. ALLAN WOODS, AS CHIEF OF POLICE OF THE CITY OF KINGSTON, N. Y.

(1) CONSTITUTIONAL LAW—AUCTION—ORDINANCE PROHIBITING AUCTION SALES AFTER SUNDOWN IS UNCONSTITUTIONAL.

A sale by auction is a legitimate method of doing business and a municipal ordinance which attempts to prohibit auction sales after sundown is not a valid police regulation.

(2) SAME—CHIEF OF POLICE WILL BE ENJOINED FROM ENFORCING SUCH ORDINANCE.

Where the enforcement of a municipal ordinance would affect property rights and work irreparable injury, a court of equity has jurisdiction to enjoin such enforcement upon the ground that the ordinance is unconstitutional.

(3) SAME.

Plaintiff, a resident taxpayer of the city of Kingston, N. Y., conducts therein a jewelry store and at considerable expense hired a professional auctioneer to sell the stock of jewelry in his place of business at public auction. Under a city ordinance which forbade auction sales between sunset and 8 o'clock A.M., the mayor and chief of police granted plaintiff a permit to conduct the sale from 8 o'clock in the morning to 7:30 in the evening. The chief of police notified plaintiff that if the sale was held after 7:30 in the evening he would enforce the ordinance and place plaintiff under arrest. In an action against the chief of police to restrain any interference by him with plaintiff's sale of goods at public auction on any week day between the hours of 8 A.M. and 11 P.M. and from enforcing the ordinance which provides that a violation thereof shall constitute a misdemeanor, *held*, that plaintiff was entitled to an injunction *pendente lite* on the ground that the provision of the ordinance forbidding sales between sunset and 8 A.M. was violative of the Constitution of the United States and the Constitution of the State of New York in that it deprives plaintiff of his property rights and of his right to pursue a lawful occupation.

APPLICATION for an injunction order pending the trial of this action, enjoining the defendant from interfering with the plain-

tiff's sale of goods at public auction at his place of business in the city of Kingston, N. Y., on any week day between the hours of eight A.M. and eleven P.M. and from enforcing a certain ordinance passed by the common council of the city of Kingston on the 6th day of June, 1916.

*Frank W. Brooks,* for plaintiff.

*Walter N. Gill,* corporation counsel, for defendant.

ROSCHE, J.:

This action is brought for an injunction restraining the defendant, the chief of police of the city of Kingston, from interfering with the plaintiff's conduct of his business in carrying on a proposed auction sale and enjoining the defendant in his official capacity from enforcing or attempting to enforce an ordinance forbidding an auction sale after sundown.

The plaintiff is a resident and taxpayer in the city of Kingston, and conducts a jewelry store on his premises at No. 37 North Front street in that city. He owns a jewelry stock worth between $6,000 and $7,000, which he is anxious to dispose of at public auction, and to carry out his intentions hired a professional auctioneer at considerable expense to sell the same to the highest bidder. The plaintiff, after having planned his auction sale, learned that there was a city ordinance regulating such sales, and without having any information or knowledge as to the validity of the ordinance, applied to the defendant for a license to conduct the auction and was granted a permit to conduct the sale from eight in the morning to seven-thirty in the evening. He determined after the permit had been granted that it was not practical to conduct a successful auction, as contemplated, if he could not carry on the auction after the hour of seven-thirty in the evening. The plaintiff contends that he could not advantageously dispose of his stock

unless the sale could be carried on in the evening. The ordinance provides that a violation of its provisions constitutes a misdemeanor and expressly provides that the mayor and chief of police shall have authority to issue the license " except as to auction sales between sunset and eight o'clock A.M., which are forbidden." The plaintiff has been notified by the defendant that if plaintiff holds an auction sale after seven-thirty in the evening the defendant will enforce the ordinance and place plaintiff under arrest. The plaintiff alleges that thereby he will be exposed to publicity and irreparable injury to his business.

The plaintiff charges by his complaint that the ordinance is void and illegal, in that it is not a reasonable one and prohibits the carrying on, in a lawful manner, of a legitimate business. It is claimed that the provision in the ordinance forbidding sales between sunset and eight A.M. is violative of the Constitution of the United States and the Constitution of the state of New York, in that it deprives the plaintiff of his property rights and deprives him of his right freely to pursue a lawful occupation.

Upon the complaint and affidavits setting forth the foregoing facts, among others, the plaintiff obtained an order to show cause why a temporary injunction should not be granted. On the return of such order to show cause, the plaintiff makes this application for a temporary injunction restraining the defendant from interfering with his conduct of business in carrying on an auction sale in the evening of any week day.

The question presented is whether the ordinance attempting to prohibit auction sales in the evening is a valid police regulation. If it is, this application should be denied. If it is not, then the plaintiff should not be interfered with in the legitimate pursuit of his business. The Court of Appeals in the case of Ives v. South Buffalo Ry. Co., 201 N. Y. 271, at page 301 stated that: " In order to sustain legislation under the police power the courts must be able to see that its operation

tends in some degree to prevent some offense or evil, or to preserve public health, morals, safety and welfare. If it discloses no such purpose, but is clearly calculated to invade the liberty and property of private citizens, it is plainly the duty of the courts to declare it invalid, for legislative assumption of the right to direct the channel into which the private energies of the citizen may flow, or legislative attempt to abridge or hamper the right of the citzien to pursue, unmolested and without unreasonable regulation, any lawful calling or avocation which he may choose, has always been condemned under our form of government."

In taking up for consideration the law controlling the determination of this question, it might be observed that auctions have been a method of carrying on and conducting the business of sale of goods for many centuries. (6 C. J. 821; Anderson v. Wisconsin Cent. Ry. Co., 107 Minn. 296; 20 L. R. A. [N. S.] 1133.) The appointment of auctioneers, their regulation and control, has been the subject of statutory control and has been one of the acknowledged police powers from colonial days to the present time. (People ex rel. Schwab v. Grant, 126 N. Y. 473.) The constitutionality of the laws which have sought to regulate the licensing of auctioneers has been sustained by our courts. (Schwab v. Grant, *supra.*)

The provisions of law of a general character at present in force regulating the licensing of auctioneers and prescribing the conduct of auctions are found in article 3 of the General Business Law. The validity of such law is not before the court for consideration in this case, but reference is made to it for the purpose of pointing out the statutory regulations and control in force in relation to the conduct of this line of business. In this statute referred to are found provisions limiting and providing for the compensation of auctioneers. (Gen. Business Law, § 21.) It provides also for the fixing by the common council of a city of the place within such city for the holding

of auctions of certain classes of personal property. (Id. § 22.)
A bond is also required from the auctioneers in cities (Id. § 23)
and the control and licensing of auctioneers by the comptroller
of the state is prescribed. (Id. § 24.) There is also a provi-
sion in relation to penalty. (Id. § 21.) Mock auctions are
forbidden by section 943 of the Penal Law.

From the foregoing references it can be seen that this class
of business is something that should, in the judgment of the
legislature, be subject to statutory control and supervision.
The purpose of these laws is to prevent the conduct of auctions
by dishonest individuals and the carrying on of fraudulent and
deceitful practices. It hardly needs any argument, however,
to justify the assertion that the business of sale is carried on by
means of auction as legitimately as by any other method.
There are a number of instances of statutory provisions where
auction sales are treated with consideration and even favor by
statutory enactment. The Personal Property Law (§ 31, subd.
6) provides that a memorandum made by an auctioneer at the
time of a public auction as to a sale shall be considered equiv-
alent in effect to a note of the contract or sale subscribed by
the party to be charged therewith. This law was enacted in
the furtherance of public auctions to except them from the
provision of the Statute of Frauds requiring a note or memo-
randum to be subscribed by the party to be charged.

Long prior to the establishment of this country, sale by auc-
tion was concededly a legal and a proper method of disposing
of goods for the highest price one could obtain. The fact that
the state has during its whole history undertaken to license and
regulate the business or profession of an auctioneer does not
classify such business or profession other than a legitimate one.
There are many other professions which the state has under-
taken to license and regulate, among them being the professions
of law, medicine, dentistry and veterinary surgery. With all

9

the safeguards thrown around the business of sale by auction, the question suggests itself: What is the true purpose of the provision of the ordinance forbidding auction sales after sundown? It is not an offense or evil because it is a legitimate method of doing business. It is hard to conceive that the conduct of an auction after sundown would affect the health, morals, safety or welfare of the community. If the ordinance were established for the purpose of stifling competition, then it was not a proper exercise of the delegated police power of the state granted to the city to license and regulate auctions and auctioneers. To justify the state or a municipality thereof to interpose its authority in behalf of the public, it must appear not only that the interests of the public generally, as distinguished from those of a particular class, require such interference, but also that the means are reasonably necessary for the accomplishment of the purpose and not unduly oppressive upon individuals. Lawful occupations cannot be arbitrarily interfered with by unusual and unnecessary restrictions established under the guise of protecting public interests. The determination of the legislature as to what constitutes a proper exercise of its police powers is not final or conclusive, but is subject to the supervision of the courts. (Lawton v. Steele, 152 U. S. 133, 137; People ex rel. Moskowitz v. Jenkins, 202 N. Y. 53.)

It could be urged as an objection to auction sales after sundown that noises and disturbances might be caused thereby which would unreasonably interfere with the quietness of the neighborhood. The statutes of the state do not lack in any particular proper safeguards for the peace and quiet of the community. The provisions of law in relation to disorderly conduct and disorderly assemblies and interference with streets and highways would apply to public auctions in the daytime as well as night-time and would apply to all public meetings. The law as to nuisances, both public and private, would protect the

neighborhood from being unreasonably imposed upon. In fact, it is hard to conceive how a public auction conducted in a reasonable and orderly manner would cause any more disturbance than any other public meeting or gathering.

It is contended by the defendant that express power was conferred on the common council of the city of Kingston (Laws of 1896, chap. 747, § 120, subds. 21, 50) to "regulate by license or prohibit auction sales in said city," and hawking or peddling in the streets, and to "make general ordinances, by-laws and regulations not repugnant to the general laws expedient for the good government of the city." The defendant also refers to subdivision 13 of section 20 of the General City Law wherein there is conferred on every city of the state the power "to maintain order, enforce the laws, protect property and preserve and care for the safety, health, comfort and general welfare of the inhabitants of the city and visitors thereto; and for any of said purposes to regulate and license occupations and businesses." We are not considering the general legality of the ordinance in question. That the city undoubtedly under these provisions of the statutes had the right to pass an ordinance licensing auctioneers and regulating auctions in a reasonable manner is not questioned. Naturally the legislature, in granting the power to enact an ordinance in relation to the regulation of auctions and auctioneers and the licensing of occupations and businesses, did not grant the right to adopt any unreasonable and unfair regulations. The legislature did not have that power itself.

The case of Village of Port Jervis v. Close, 2 Silver. Sup. Ct. 501; 6 N. Y. Supp. 211, holds in favor of the validity of a village ordinance requiring a license fee of five dollars for each day of the sale of merchandise at public auction. It was there held that selling at auction is essentially public in its character and properly within the power of the state to regulate. The court also held that there was nothing unjust or oppressive

in the ordinance and that it could not be said that it was an unreasonable regulation or restraint of trade.

In the case of City of Buffalo v. Marion, 13 Misc. Rep. 639, upon an appeal by the city from a judgment of the Municipal Court dismissing its complaint against the defendant, the Superior Court of the city of Buffalo (General Term) held that the charter of the city of Buffalo provided that the common council should from time to time enact ordinances to license and regulate auctioneers and that, pursuant to that provision of the charter, the common council enacted an ordinance prohibiting the sale of watches at auction after six o'clock in the evening under a penalty of fifty dollars. The defendant having violated the ordinance, an action was brought to recover the penalty. The defendant claimed that the ordinance was void and the court below so decided. The General Term of the Superior Court in its opinion stated: " The ordinance in question follows the charter and is authorized by it. The licensing of auctioneers and the regulation of their conduct as such has always been held within this state to be within the power of the legislature, and that statutes and ordinances for that purpose. are valid. (Chap. 17, tit. 1, pt. 2, R. S., Banks & Bros. 8th ed.; People ex rel. Schwab v. Grant, 126 N. Y. 473.)"

The foregoing cases are cited by the defendant as sustaining the validity of the provision of the ordinance in question. The portion of the opinion quoted from the City of Buffalo v. Marion Case shows that the decision in that case was based upon the opinion in People ex rel. Scwab v. Grant, *supra.* A reading of the Schwab Case shows that the only question there involved was the legality of the provision of the statute requiring the licensing of auctioneers and granting to the mayor the discretionary power to grant or refuse a license. In People ex rel. Moskowitz v. Jenkins, 202 N. Y. 53, 59, reference is made to the Schwab Case and the scope of its opinion is there discussed. From a careful reading of the opinion in the

Schwab Case, together with the opinion in People ex rel. Moskowitz v. Jenkins, it does not seem that it sustains or in any way justifies the decision in the case of City of Buffalo v. Marion, *supra*.

From the papers submitted there does not appear to be even the suggestion of a reason for the provision of the ordinance in question, and after having given the subject some thought it is impossible to find any evil that would be prevented or good promoted by the provision of the ordinance referred to. An examination of the cases in other jurisdictions discloses that there are two cases holding that a provision of an ordinance similar to the foregoing is unconstitutional on the ground that it is an unreasonable restraint upon the conduct of legitimate business. In the case of Hayes v. City of Appleton, 24 Wis. 542, where in an ordinance there was a provision that no licensed auctioneer should sell any goods, wares or merchandise after sundown, it was held upon its face to be unreasonable and unconstitutional and void. It was there said in part: " It is not shown in the case what evil was to be prevented or good promoted by the passage of the ordinance in question; nor can we judicially see that any restriction of the kind was necessary. No cause for it, whether good or bad, is even suggested in the brief submitted by counsel for the city; and it is impossible for us to conjecture that any sufficient one existed. * * * And so, too, it might be proper to restrain such sales on particular days or at particular places; or, if the manner of conducting them was particularly objectionable, to prescribe how they should be conducted."

In the case of People v. Gibbs, 186 Mich. 127; Ann. Cas. 1917B, the Supreme Court of Michigan held that an ordinance of the city of Detroit prohibiting the holding of public auctions except between the hours of eight A.M. and six P.M. was neither necessary nor proper for the public welfare or protection of society, and that it was a discrimination in restraint

of trade and an unreasonable regulation. In the opinion in that case we find the following language: " Entirely apart from all question of motive we are impressed that, with the meager facts shown here, and upon its face, section 12a [referring to ordinance], necessarily treated as a part of the ordinance and considered in that relation, is a discriminatory and unreasonable interference with the freedom of trade beyond any necessities of the case, does not appear upon its face, and is not shown to be a necessary means to an end within the police power of public protection, and is, therefore, without the legitimate field of reasonable regulation.

" Auctioneering, honestly conducted, is a business within the legitimate scope of trade, traffic or merchandizing. When by ordinance all fraud and misrepresentation in effect sales and when all questionable methods of attracting attention or conducting sales, which are recognized as likely to develop in the special line of business, and which may tend to public annoyance, imposition and disturbance of public peace and safety of a community, have been guarded against and prohibited, further restriction extends beyond the fair scope of powers granted to regulate for the protection of society."

Also : " We are unable to discern from this record that section 12a was proper or necessary for the public welfare, or the protection of society; it does not appear, and certainly is not a matter of common knowledge, that the business of a licensed auctioneer of good character, under bond, is a menace to public peace, health, or safety when properly conducted, in his place of business, during general business hours, or that the excluded hours would be more disturbed by such business, than those which are not. This attempt to prohibit it during a portion of business hours without any disclosed, special reason therefor, impresses us as a discrimination in restraint of trade, and an unreasonable regulation, beyond the limits of police power conferred upon the municipality to license and regulate."

The ordinance in question also attempts to regulate the sale of transient goods. The validity of such provisions might be doubtful in view of the holding of the Court of Appeals in the case of People ex rel. Moskowitz v. Jenkins, *supra*. That question, however, is not here for determination except that in an examination of the opinion in the Moskowitz Case and from its reading one might be impressed with the language used in that opinion expressing condemnation of statutes and ordinances similar to the one under consideration. In the Moskowitz Case (p. 58) the following language was used by Judge Cullen: " These features of the statute plainly show its purpose, which was not to safeguard customers against fraud, but local shopkeepers from competition. The statute is of the same kind as that condemned by this court in People v. Gillson (109 N. Y. 389). There the defendant was prosecuted under a statute making it a misdemeanor for the vendor of an article of food to make sale of the same upon any inducement that anything would be delivered as a premium, prize or gift to the purchaser. The statute was held void on the authority of Matter of Jacobs (98 N. Y. 98) and People v. Marx (99 N. Y. 377). Judge Peckham said of the statute: ' It is evidently of that kind which has been so frequent of late, a kind which is meant to protect some class in the community against the fair, free and full competition of some other class, the members of the former class thinking it impossible to hold their own against such competition, and therefore flying to the legislature to secure some enactment which shall operate favorably to them or unfavorably to their competitors.' "

The decision in City of Buffalo v. Marion (supra) seemingly was based upon the erroneous idea that the holding of the Court of Appeals in the case of People ex rel. Schwab v. Grant (126 N. Y. 473) was that the legislature, by granting to municipalities power to establish ordinances in relation to auctions and auctioneers, could so regulate the conduct of auctions

and the business of auctioneers as to practically prohibit that line of business or calling. From a reading of the opinions of the lower courts in the Moskowitz Case such seems also to have been their view. Such view taken by the court in the Marion Case and by the lower courts in the Moskowitz Case is not justified. Such conclusion is apparent in view of the decision of the Court of Appeals in the Moskowitz case. This is borne out by the following language quoted from the opinion (p. 59) in the latter case: " The counsel for the respondent relies largely on the authority of People ex rel. Schwab v. Grant (126 N. Y. 473), where it was held that to pursue the business of an auctioneer in the city and county of New York a license was necessary, and that it was discretionary in the mayor whether to grant or refuse a license. It must be always remembered that law, even constitutional law, rests not wholly on principal, but in part on custom and tradition. A tourist from another planet might at first be unable to perceive why a citizen has the inalienable right to raise and possess chickens at all times, and yet can be deprived of that right as to partridges. But if he pursued his historical study' of game laws back to the times when a common man ran greater danger of capital punishment for killing a deer than for killing a human being, he would understand how the distinction came to exist. Chief Judge Ruger in the Schwab Case shows that during and ever since colonial times the calling of auctioneer had been regarded as a vocation not open to all, but subject to special license and authority.

" It is undoubtedly true that the legislature may impose on professions, callings, businesses and vocations license fees for the purpose of revenue, and though termed license fees, they are enacted not under the police power, but under the power of taxation. There exists also in the legislature the right to classify vocations or businesses for the purpose of taxation.

One class may be taxed at one rate and another class at another rate."

The provision in this ordinance forbidding the conducting of auctions after sundown cannot be shown to be reasonable and constitutional legislation, under decisions of the class of People v. Charles Schweinler Press (214 N. Y. 395); Commonwealth v. Riley (210 Mass. 387); 25 Am. & Eng. Ann. Cases, 388. The statutes referred to in those decisions were passed for the protection of women in their employment.    The provision of the ordinance here considered comes rather within the condemnation of such class of cases as the tenement-house cigar manufacture case (Matter of Jacobs, 98 N. Y. 98); the oleomargarine case (People v. Marx, 99 id. 377); the trading stamp case (People v. Gillson, 109 id. 389) and the case of People ex rel. Moskowitz v. Jenkins, cited and quoted from supra.    The opinion in the Marion Case is merely to the effect that the charter of the city of Buffalo permitted the enactment of the ordinance in question.    The Wisconsin Case (Hays v. City of Appleton) and the Michigan Case (People v. Gibbs) are complete opinions reasoning out and determining the question here for determination and decide against the validity of a similar provision of a city ordinance.    Such opinions, together with the opinions of the Court of Appeals last referred to, justify the conclusion that this provision of the ordinance in question is invalid and unconstitutional.    We find the following language in the case of Hauser v. North British & Mer. Ins. Co. (206 N. Y. 455, 462): "Where the Legislature may prohibit a business, or an occupation, it may prescribe conditions upon which it may be conducted; but, if the business, or occupation, be useful to the citizen, and it be lawful, the Constitution, whether of the State or of the Nation, guarantees to him the right to pursue it freely and any arbitrary restriction upon its pursuit should be condemned as an invasion of the guaranty. In varying language, but with the same thought, in very many

cases, this court has pointed out that the constitutionality of an act is to be tested by its effect upon the citizen's right freely to pursue lawful occupations; that a statute under the guise of an exercise of the police power cannot arbitrarily interfere with that liberty of pursuit; that the equal protection of the laws means equality of opportunity to all in like circumstances and that classification to be valid must not be arbitrary and discriminate against persons without a basis in reason."

The presumption exists that the ordinance as adopted is constitutional and valid, but where the action of the Legislature or common council is arbitrary and exceeds its power by interfering with the liberty of contract or the right to carry on business, then the court can declare the enactment unconstitutional. Such act, however, should not be based upon the mere fact that a court might differ with the Legislature in its views of public policy, or that a judge might hold a view inconsistent with the propriety of the legislation. (People v. Charles Schweinler Press, 214 N. Y. 395, 406; McLean v. Arkansas, 211 U. S. 539, 547; Chicago, B. & Quincy R. R. Co. v. McGuire, 219 id. 549, 569.) Ordinarily an injunction should not be granted during the pendency of an action determining the unconstitutionality of a provision of an ordinance or law. A court of equity, however, has jurisdiction to enjoin the enforcement of a municipal ordinance, upon the ground that it is unconstitutional, in cases where its enforcement would affect property rights and work irreparable injury. (Wood v. City of Brooklyn, 14 Barb. 425; Schuster v. Metropolitan Board of Health, 49 id. 450; Manhattan Iron Works Co. v. French, 12 Abb. N. C. 446; United Tract'n Co. v. City of Watervliet, 35 Misc. Rep. 392; Ulster Square Dealer v. Fowler, 58 id. 325; Buffalo F. Co. v. Town of Cheektowaga, 61 id. 404; Star Co. v. Brush, 103 id. 631, 104 id. 404; City of New York v. New York Mutual Gas Light Co., 135 App. Div. 260.)

In this case it clearly appears to the court that there is no

legal or valid objection to plaintiff's carrying on and continuing his legitimate business. There can be no doubt as to the invalidity of the portion of the ordinance complained of, and no resultant injury will be suffered by any one through the granting of the injunction during the pendency of the action. The plaintiff is entitled to an injunction. There does not appear to be any reasonable excuse for the enactment or the existence of the provision of the ordinance in question.

Application for temporary injunction granted.

Ordered accordingly.