Manuel A. Gomez, M.
Defendant is charged with violating section B32-207.0 of the Administrative Code of the City of New York (L. 1937, ch. 929) in that it unlawfully published and conducted a “ forced out of business sale ” without a license therefor.
It was established at the trial that defendant corporation, which conducts a haberdashery store in the borough of Manhattan, applied to the Commissioner of Licenses of the City of New York for a license to conduct and advertise a “ forced out *447 of business sale ’ ’. The commissioner refused to issue the license. The defendant made an application to the Supreme Court to review the determination of the commissioner of licenses. Mr. Justice Steuer, in an extensive opinion, upheld the determination of the commissioner as being neither arbitrary nor capricious. (Matter of Windsor Madison Corp. v. O’Connell, 9 Misc 2d 1087.)
The defendant did not await the determination of the commissioner of licenses to begin to conduct and advertise the sale, nor was it deterred by the denial of the license. The testimony at the trial establishes beyond a reasonable doubt, that, during the period that the application was pending and subsequent to its denial, the defendant affixed large signs to the exterior and on the windows of its premises, stating that it was being forced out of business.
Numerous summonses were served upon defendant in an effort to enforce compliance with the Administrative Code. The first eight summonses were consolidated at the trial herein, but it was agreed that separate verdicts are to be rendered.
This court is not, of course, the proper forum to review the decision of the commissioner of licenses and its affirmance by the Supreme Court.- The sole issue before this court is whether the defendant has published and conducted a “ forced out of business sale ” without first procuring a license therefor. That issue is resolved against the defendant. Even if the decision and judgment of Mr. Justice Steuer should be reversed on appeal, the defendant was not justified in proceeding with the sale herein so long as the license had not been granted.
The only remaining question is the validity of the Code provisions, the constitutionality of which is challenged by the defendant.
Section B32-205.0, which defines the sales covered by article 28 of chapter 32 of the Administrative Code, provides as follows:
“ Definitions. — Whenever used in this article, the following terms shall mean:
“ 1. ‘ Sale.’ The sale or an offer to sell to the public, goods, wares and merchandise of any and all kinds and descriptions on hand and in stock in connection with a declared purpose, as set forth by advertising, on the part of the seller that such sale is anticipatory to the termination, closing, liquidation, revision, wind-up, discontinuance, conclusion or abandonment of the business in connection with such sale. It shall also include any sale advertised to be a ‘ fire sale,’ ‘ adjustment sale,’ ‘ creditor’s sale,’ ‘ trustee’s sale,’ ‘ liquidation sale,’ ‘ reorganization sale,’ ‘ alteration sale,’ * executor’s sale,’ ‘ administrator’s sale,’ *448 ‘ insolvent sale, ’ 1 insurance salvage sale, ’ ‘ mortgage sale, ’ ‘ assignee’s sale,’ ‘ adjustor’s sale,’ ‘ receiver’s sale,’ ‘ loss-of-lease sale,’ ‘ wholesaler’s close-out sale,’ ‘ creditor’s committee sale, ’ ‘ forced-out-of-business sale, ’ ‘ removal sale ’ and any and all sales advertised in such manner as to reasonably convey to the public that upon the disposal of the stock of goods on hand, the business will cease and be discontinued.
“ 2. ‘ Publish, ’ ‘ publishing, ’ ‘ advertisement, ’ ‘ advertising. ’ Any and all means of conveying to the public notice of sale or notice of intention to conduct a sale, whether by word of mouth, by newspaper advertisement, by magazine advertisement, by handbill, by written notice, by printed notice, by printed display, by billboard display, by poster, by radio announcement and any and all means including oral, written or printed.”
The statute further provides that it shall be unlawful to publish or conduct a sale of the type indicated without a license therefor. (§ B32-207.0.) In order to secure a license, an application in writing, under oath, must be submitted which shall, among other things, contain an itemized list of the goods, wares and merchandise to be offered for sale, the place where such stock was purchased or acquired, and the means to be employed in publishing such sale, together with the proposed content of any advertisement. (§ 32-208.0.) The commissioner of licenses is required to make an investigation of the application, and at the completion of such investigation, may grant a license for a period not exceeding 30 days. (§ B32-209.0.) The application is to be accompanied with a fee of $25. Should the the application be denied, the fee is to be applied against the costs of the investigation. (§ B32-212.0.) If the license is granted, a duplicate original of the application and stock list shall be available at all times to the commissioner or his inspectors, and the licensee shall permit such inspectors to examine all merchandise on the premises for the purpose of comparison with the stock list. (§ B32-214.0.) Violations are punishable by a fine of not more than $100, or by imprisonment not exceeding 60 days, or both. (§ B32-217.0.) Other provisions of the article refer to renewals, display of license and exemptions.
The defendant asserts that the law here in question is an improper exercise of police power and violates the due process clause of the Federal Constitution (14th Arndt.) and the Constitution of the State of New York (art. I, § 6),
The provisions of the statute clearly indicate that it was the intention of the City Council to protect the public from the consequences of fraud, by requiring merchants who represent that they intend to dispose of their entire stock of merchandise and *449 go out of business thereafter to submit proof as to the truth of the representations. It has long been established that the police power of the State is not limited to regulations necessary for the preservation of good order or the public health and safety, but extends to the prevention of fraud and deceit, cheating and imposition. (6 R O. L., Constitutional Law, § 202, p. 208.) ‘‘ It must be laid down as a general principle that legislation is valid which has as its object the promotion of the public health, safety, morals, convenience and general welfare or the prevention of fraud and immorality.” (People ex rel. Armstrong v. Warden of City Prison, 183 N. Y. 223, 226.) Moreover, it is not necessary to prove fraud in order to exercise the police power of the State. “ It [the State] may regulate a business, however honest in itself, if it may become a medium of fraud. It is not enough to say that the business may be honestly conducted.” (People v. Beakes Dairy Co., 222 N. Y. 416, 427.)
The power to pass laws for the prevention of fraud must be reasonably exercised so as to accomplish its purpose. “ The right is not without limitation, for it must be so exercised as not to deprive a citizen of life, liberty or property without due process of law, or to deny to any person the equal protection of the laws. A reasonable regulation to protect the rights of all, however, does not deprive anyone of his property simply because it interferes with the use thereof to the extent necessary to protect the public from fraudulent practices. Legislation which interferes only to a reasonable extent with the enjoyment of property, in order to promote the general welfare, and which in fact tends to promote the general welfare, violates neither Constitution.” (People v. Luhrs, 195 N. Y. 377, 381-382.)
In the statute in question herein, the restrictions imposed upon merchants who propose to conduct or to publish a sale of the type defined in the code article, are aimed at and limited to regulations reasonably necessary to prevent falsehoods in connection with the proposed sale. Before a license can be issued, an affidavit, under oath, listing the stock on hand at the beginning of the sale must be submitted, and an investigation must be conducted to verify the statements in the affidavit. During the period the license is in effect, the licensee must maintain stock records and must at all times permit the commissioner or his inspectors to examine all merchandise- on the premises for comparison with the stock lists contained in the original application. The license fee imposed is a reasonable charge for the costs of investigation.
The statute does not interfere with defendant’s right to sell its goods, nor does it impair its freedom to determine the price at which it will sell them. The restrictions imposed by the *450 statute are no more drastic than is reasonable to accomplish the end for which the law was adopted. (Cf. People v. Arlen Service Stations, 284 N. Y. 340.)
The defendant relies on the case of People ex rel. Moskowitz v. Jenkins (202 N. Y. 53) which held unconstitutional and void a provision of the G-eneral Municipal Law which enabled local communities to adopt ordinances under which licenses were required by transient dealers to conduct, inter alia, bankrupt’s sales, assignee’s sales and fire sales. However, the statute there in question merely required that a license fee be paid before the sale could be conducted. ‘ ‘ If the man pays his license fee he may sell the goods without penalty, though his statement that they are damaged or bankrupt stock is entirely untrue.” (202 N. Y. 57, supra.) There was no requirement that an application, under oath, be submitted, nor was there any provision for investigation of the application. As the Court of Appeals stated in its decision: “ If the statute provided that the transient trader should, as a condition of obtaining the license, make proof to the local authorities that the facts stated as to his stock were true, and thereupon be subjected to a reasonable license fee covering the expense to which the municipality had been put, the statute would be upheld.” (202 N. Y. 57, supra. See, also, State v. Kartus, 230 Ala. 352.) The statute involved herein meets precisely the conditions laid down by the court.
It follows, therefore, that the enforcement of the statute here in question constitutes a valid exercise of a valid police power and does not deprive defendant of property without due process of law. (See, also, Matter of Windsor Madison Corp. v. O’Connell, 9 Misc 2d 1087, supra.)
Nor has defendant been deprived of the equal protection of the laws. There is no proof that the local law is discriminatory in any way. The only persons exempt from its provisions are those acting under court orders, sheriffs and marshals acting in accordance with their, powers and duties as public officers, and duly licensed auctioneers, selling at auction. The latter have been subject to special license and authority ever since colonial times. (People ex rel. Schwab v. Grant, 126 N. Y. 473.) Otherwise, the local law affects alike all in a given class — merchants who publish or conduct any sale of the type defined in the article — and calls for the uniform enforcement of the act itself. (People v. Arlen Service Stations, 284 N. Y. 340, 345, supra; People v. Beakes Dairy Co., 222 N. Y. 416, 429, supra; People v. Klinck Packing Co., 214 N. Y. 121, 137.)
Nor does this court agree with the defendant’s assertion that the statute denies it the right to freedom of speech and freedom *451 of the press. (U. S. Const., 1st and 14th Arndts.; N. Y. Const., art. I, § 8.) Assuming that freedom of speech and freedom of the press were involved, the Court of Appeals has said: “A statute to promote the public health, the public safety or to secure public order or for the prevention or suppression of fraud is a valid law, although it may, in some respects, interfere with individual freedom. All business and occupations are conducted subject to the exercise of the police power. Individual freedom must yield to regulations for the public good.” (People ex rel. Armstrong v. Warden of City Prison, 183 N. Y. 223, 226, supra.)
In accordance with the foregoing decision, the defendant is convicted of violating section B32-207.0 of the Administrative Code of the City of New York.
The proof on seven of the eight summonses involved at the trial established beyond a reasonable doubt that defendant affixed large signs to the exterior and on the windows of its premises, stating that it was being forced out of business. Defendant is fined $100 for each of these violations.
The proof on the eighth summons consisted of testimony that an advertisement had appeared in a New York evening newspaper bearing the name and address of the defendant, and advertising a “ forced out of business sale”. No proof was offered as to who placed the advertisement or who paid for it. This court holds that the proof on this violation was insufficient to establish the guilt of the defendant beyond a reasonable doubt, and, accordingly, the defendant is discharged as to this summons.