### The People of the State of Illinois, Appellee, v. Waskow Butter Company, Appellant.

### Gen. No. 30,324.

FOOD—*nut oil product as prohibited butter substitute.* Sale of a product consisting wholly of nut oils, salt and a vegetable coloring matter, which although yellowish in color is distinguishable from butter at a distance of 10 feet, which has a distinctive taste and odor different from butter and is not usable as a substitute therefor except for certain cooking purposes, which is packed in distinctive triangular cartons and labeled "Higgins Nut Product—prepared for cooking and baking," etc., and which is not sold or intended to be sold as a substitute for butter, is not prohibited by Cahill's St. ch. 56b, ¶ 90 *et seq.*

Appeal by defendant from the Municipal Court of Chicago; the Hon. JAMES J. O'TOOLE, Judge, presiding. Heard in the first division of this court for the first district at the October term, 1925. Reversed. Opinion filed March 2, 1926.

W. F. McLAUGHLIN, for appellant.

ROBERT E. CROWE, State's Attorney, for appellee; EDWARD H. TAYLOR, Assistant State's Attorney, and ARTHUR L. ISRAEL, of counsel.

MR. JUSTICE McSURELY delivered the opinion of the court.

This is an appeal from a judgment against defendant entered upon a trial by the court of an action of debt for the recovery of a penalty charging violation of the act "to regulate the manufacture and sale of substitutes for butter." [Cahill's St. ch. 56b, ¶ 90.] The damages were assessed at $50. It is stated that the Waskow Butter Company is only the nominal defendant, the real party in interest being the Higgins Manufacturing Company of Providence, Rhode Island, and the question involved is whether the sale in Illinois of a cooking compound called "Higgins Nut Product" is in violation of the act referred to. This act is in part as follows:

"Section 1. That for the purpose of this act, every article, substitute or compound, other than [that] which is produced from pure milk or cream therefrom, made in the semblance of butter and designed to be used as a substitute for butter made from pure milk or its cream, is hereby declared to be imitation butter. * * *

"Section 2. No person shall coat, powder or color with annato, or any coloring matter whatever, any substance designed as a substitute for butter, whereby such substitute or product so colored or compounded shall be made to resemble butter, the product of the dairy.

"No person shall combine any * * * vegetable oil * * * or combination of the two, or with either one, any other substance or substances, for the purpose or with the effect of imparting thereto a yellow color or any shade of yellow so that such substitute shall resemble yellow or any shade of genuine yellow butter. * * *"

This statute was held constitutional in *People v. Freeman*, 242 Ill. 373.

There is not much conflict in the evidence. The Higgins Nut Product is made from pure cocoanut and peanut oils in the proportions of 80 pounds of cocoanut oil, 20 pounds of peanut oil, 3 pounds of salt, and one-tenth of one per cent of harmless yellow coloring matter to each 100 pounds of the product. As an article of food it is pure, nutritious, and in no wise injurious to health. It is issued by the manufacturer and sold only in one pound, triangular paper packages, on which in large letters are the words: "HIGGINS NUT PRODUCT—prepared for cooking and baking— Higgins Manufacturing Company—Providence, Rhode Island—1-10 of 1% Vegetable Color." The product without coloring is a dirty, unappetizing gray, and it cannot be made white.

It is urged that it comes within the language of the statute [Cahill's St. ch. 56b, ¶ 91] which prohibits coloring "any substance designed as a substitute for butter, whereby such substitute * * * shall be made to resemble butter." Nut Product is shown to be suitable only for cooking and not for table use. It will not spread on bread. When put on bread it flakes and is waxy like paraffine. It has a different odor from butter, having what one witness described as a "nutty" smell. It also has a distinctly different taste from butter, giving a slight taste of peanuts to articles of food in which it is used. It will not brown in cooking and becomes white. It has more oily globules than butter has in cooking. Witnesses testified that when used

with other materials it acts very differently than butter, and that no one would mistake it for butter. While there is some resemblance to butter in color, witnesses were able to distinguish between samples of butter and Nut Product held at a distance of about 10 feet. It is also in evidence that the product may be used in cooking certain foods in which butter is usually used.

A reasonable construction of the words of the Illinois act, "any substance designed as a substitute for butter," means a substance designed as a substitute for butter in all the usual and customary uses of butter. The act could not reasonably apply to a substance which cannot be used for the largest and most usual use of butter, namely, as a spread on bread. A reasonable construction must take into account butter's major use and not alone its use for cooking. We construe the language of the statute as nonapplicable to the Nut Product in question.

Is it within the general terms and intent of the act? In the *Freeman* case, *supra,* the court said:

"Aside from any effect upon the public health the object of the act is, not to prohibit or discriminate against the manufacture or sale of substitutes for butter, but to regulate such manufacture and sale so as to protect the public against the sale, as butter, of a different article. With the sale, for what it is, of any substitute for butter the law does not interfere. It is only the sale under pretense that the article sold is that which it is not that the law affects. * * * The purpose of the act was to protect the public against fraud of this kind by preventing the vendor of any substitute for butter from using coloring matter therein to impose upon his customers and deceive them into believing they were purchasing butter when they were purchasing a different thing."

The court held the act valid as a proper exercise of the police power of the state to prevent fraud, deceit, cheating and imposition.

This product was under consideration in *Higgins Mfg. Co. v. Page,* 297 Fed. 645, which was an action for the recovery of a certain tax on oleomargarine which the statute defined as such mixtures and compounds as are "made in imitation or semblance of butter, or when so made, calculated or intended to be sold as butter or for butter." The court, in considering whether the Higgins Nut Product came within this language, held that the trade dress was not only not an aid to deception but was designed to tell the truth and avoid deception; that the triangular form of the package and the words thereon negative any deception of the customer; that when such package was offered to a customer and opened, the yellow color of the product would probably not make him believe that he had obtained butter; that if there might be a momentary deception it would be corrected at once on tasting it, and it would not be eaten on bread as butter. The court further considered the use of the product in cooking and baking, noting that the yellow color is used not to deceive but to avoid prejudice against greasy food products which are white or gray. The court found that it does not have the characteristic butter taste, but has a nutty flavor, and held that this product is not made in imitation of butter and is not calculated or intended to be sold as butter or for butter, and therefore it was not within the statute.

The evidence before us shows that the Nut Product contains no dairy products and there is no pretense in any of the advertising that it does. It is represented only as a cooking compound, and it is not advertised as butter or as a substitute for butter, and the word "butter" is not used in the advertising. It is conceded by the plaintiff that the product was not designed to deceive or to be sold as butter or for butter. As no element of deception is alleged, proven or claimed, we hold that the prohibition of this article is not within the intent of the act.

As the sale of this product is not prohibited specifically by the language of the act and is not within its general intent, the judgment is reversed.

*Reversed.*

Matchett, P. J., and Johnston, J., concur.