(No. 6755— )

THE CANAL RANDOLPH CORPORATION, Claimant, *vs*. STATE OF
ILLINOIS, DEPARTMENT OF LABOR, BUREAU OF EMPLOYMENT
SECURITY, Respondent.

*Opinion filed December 3, 1975.*

HOLDERMAN, J.

In February of 1955, the State of Illinois, through
its Departments of Finance and Labor, entered into a
lease with Butler Brothers, Claimant's predecessors, for
office and warehouse space in a building at Randolph,
Canal and Lake Streets, Chicago, Illinois. The lease was
to take effect on July 1, 1955, and the original term was
for two years. The lessee was given the option to renew
for nine successive two-year terms. Rent was stipulated
at $2.50 per year per square foot of office space and
$1.50 per year per square foot of warehouse space.
Thereafter, under the option periods, the amount of
office space was to be computed at a $1.60 per annum
per square foot.

Butler Brothers conveyed the premises to Claimant,
along with an assignment of the lease, and Respondent
started paying rent to the Claimant October 1, 1956.

The options to renew the lease were exercised.

In June of 1970, Claimant began billing Respondent
for alleged excessive air conditioning and heating
charges incurred as the result of Respondent's usage of
the premises in double and triple shifts.

Count I of the complaint seeks damages in the sum of $75,000 on the theory that when the premises were leased it was understood that Respondent would use the premises only from 8:00 a.m. to 6:00 p.m., Monday through Friday, and from 8:00 a.m. to 2:00 p.m., on Saturdays, but that contrary to the understanding, the Respondent had for several years been using part of the premises for 24 hours Mondays through Saturdays. The basis of the complaint is that the use of the premises by the lessee was in excess of the original contemplated use and, because of that, Claimant had to furnish additional heat, air conditioning, electrical services and maintenance.

Count II of the complaint requested reformation of the lease so that Claimant could continue to collect for the alleged excessive use in future years.

The Claimant contends that it is entitled to $120,031 for the period from June, 1970, to October, 1972, based on a charge of $15 per hour for the off hours. The $15 charge purports to be only for heating and air conditioning during the off hours. Any claim for other uses, such as elevators, additional water, additional supplies and the like, are apparently being waived.

Respondent contends that the original lease was negotiated at a level below the prevailing loop charges due to the condition of the building. It was a warehouse originally and not suitable for office usage. The costs of remodeling were paid by the Respondent. Also, Respondent was the first tenant in the former warehouse. Respondent admits that when the lease was executed, the employees were not required to work double and triple shifts. The multiple shifts were first used at least two years prior to 1970. But it was not until 1970 that Claimant began its billing for these charges.

The lease provides as follows:

(2) The lessor agrees:

D. To operate air conditioning equipment installed in accordance with the plans and specifications above mentioned.

E. To furnish between the hours of 8:00 a.m. to 6:00 p.m. daily, Monday through Friday and 8:00 a.m. to 2:00 p.m. on Saturday, not less than 72 degrees Fahrenheit of heat throughout the entire area; in the event lessee has a night crew working, heat shall be furnished in the area which the crew is working.

Paragraph G of the Outline Specifications, attached to the complaint as Exhibit A, provided that the lessor would:

G. Install year-around climatic controlled air conditioning system . . .

Respondent argues that this proves that the lease contemplated the use of night crews. There was no provision in the lease requiring Respondent to pay for the heating and air conditioning, even though later tenants did have leases which contained such provisions. Respondent further argues that the damages are uncertain and speculative and cannot be made a basis of recovery.

Claimant produced as a witness one Thomas F. Croke as a real estate expert in the management field. He testified that from his analysis he arrived at a charge of $30 per hour for 60,000 sq. ft.; that, in checking with others, he found that the charges ranged from $35 per hour for heating and $50 per hour for cooling after the normal operating hours; and that $15 per hour charged by the Claimant in this case was fair and reasonable. Other departments of the State and Federal government as well as other corporations paid this rate when they occupied the same building.

This claim is really one for additional rent based on use of heat and air conditioning not contemplated under the terms of the original lease.

The issue is whether or not the lease is ambiguous in regards to heating and cooling and, if so, can the

circumstances existing at the time of the lease be considered. *24 I.L.P. Landlord and Tenant Sec. 43* states:

There is no necessity to resort to extrinsic facts or circumstances in order to determine the intent of parties in executing a lease where such intent is clearly ascertainable from the lease itself.

In the case of *Launtz v. Kinlock Telephone Co., 239 Ill.App. 604,* the lessor agreed to furnish electrical current necessary to charge the lessee's electrical machines. The Court held that the lessor was not entitled to an increase rental on the ground that he had to run his generator seven hours a day longer than usual in order to charge lessee's machines due to their badly worn condition. Thus, a landlord doesn't necessarily have a right to increase rent when his burden is increased due to the use made by a tenant unless the lease so specifies or unless the lease is ambiguous.

The record is far from satisfactory in supplying proof that Claimant is entitled to the recovery which it seeks. The lease provides in Paragraph (2) E, Page 4, for the hours that heat will be furnished. While the lease does not state the number of hours that air conditioning will be furnished, it would seem to be a natural assumption that the air conditioning hours would be the same as those requiring heat.

A computation of the period in which air conditioning was used for over ten (10) hours per day beginning in June, 1970, is as follows:

| 1970 | June | 60 hours |
|------|------|----------|
| | July | 64 |
| | August | 80 |
| | September | 64 |
| 1971 | May | 44 |
| | June | 80 |
| | July | 102 |
| | August | 94 |
| | September | 93 |
| | | Total . . . 681 hours |

It is the Court's conclusion, based on the record, that the Claimant should be compensated only for the air conditioning hours as set forth above, and at $15.00 per hour for 681 hours, making a total of $10,215.00.

We therefore enter an award for Claimant in the amount of Ten Thousand Two Hundred Fifteen Dollars ($10,215.00).